PITTMAN (UNITED STATES v.). See Case No. 16,053.

## Case No. 11,189.

### In re PITTOCK.

[2 Sawy. 416; [1] 8 N. B. R. 78.]

District Court, D. Oregon. May 6, 1873.

USURY LAW, CONSTRUCTION OF—PROHIBITION AND PENALTY—PROHIBITORY ACT, CONSTRUCTION OF—USURIOUS INTEREST—JURISDICTION OF BANKRUPTCY COURT.

1. It is the province of the law-making power to determine what rate of interest on money will best secure and promote the public good, and therefore it is the duty of the courts to construe and administer such a law with a view to effect its objects and to promote justice.

2. Where a statute contains both a prohibition and a penalty, a contract or transaction contrary thereto is absolutely illegal and void, unless it appears, upon a consideration of the whole act, that the legislature did not so intend.
[Cited in Dowell v. Applegate, 7 Fed. 883; U. S. v. Howard, 17 Fed. 641.]

3. Where an act to regulate the rate of interest on money contains an unqualified prohibition against taking or receiving a greater interest than therein prescribed, and in a certain contingency also provides for the forfeiture of the entire usurious debt, the reasonable inference is that the legislature intended to make all acts and contracts in contravention thereof absolutely illegal and void.

4. Section two of the interest act of Oregon (Code, p. 755, c. 24, § 2) provides that, "no person shall receive any greater sum or value for the loan or use of money," than in such act prescribed: Held, that it is not necessary that this "greater sum or value" should be contracted for or received at the time of making the loan, to bring the transaction within the prohibition; but if it is received at any time for or on account of such loan or use of money, it is within such prohibition, and the whole contract or transaction becomes illegal and void.

5. This court has jurisdiction to allow or disallow claims against a bankrupt's estate, and therefore to pass upon their legality; and this, although it may not have jurisdiction to enforce a penalty imposed by the state law on account of an act making any such claim illegal.
[Cited in Re Prescott, Case No. 11,389.]

L. C. Potter made proof of a debt of $387.25 against the bankrupt's estate, to which the assignee objected on the ground that the claim was usurious and illegal. On April 10, 1873, the bankrupt and creditor were examined before the register in relation to the matter, from which it appeared that: "On October 13, 1872, Potter came into Robert Pittock's store on Front street, and asked Pittock if he wanted some money. Pittock replied that he did; Potter then counted out $370 in coin, laid it upon the desk, and Pittock gave him his note for $370, with interest at one per centum per month. At the same time, and while the money was still lying upon the desk, Potter asked Pittock how much he was going to allow him for the accommodation, when Pittock handed him $20, which Potter took and went

[1] [Reported by L. S. B. Sawyer, Esq., and here reprinted by permission.]

away." Thereupon the following questions arose, and upon the request of counsel were by the register certified to the district judge for his opinion: (1) Does the evidence taken support the charge that the claim of Potter is usurious? and (2) if so, can it be proved in bankruptcy? The certificate of the register was accompanied with an opinion that the claim ought to be rejected. The judge made an order accordingly, with leave to the creditor to have the matter placed upon the docket for argument, and show cause why the claim should be allowed.

On April 24 the matter was argued by counsel and submitted. The following is the opinion of the register:

By J. J. HENDERSON, Register:

The last clause of section one of the usury law of this state provides that one per cent. per month for the loan or use of money may be charged by express agreement of the parties, and no more. Section two provides that "no person shall, directly or indirectly, receive in money, goods, or things in action, or in any other manner, any greater sum or value for the loan or use of money * * * than is in this act prescribed;" and amounts to a prohibition. Section three further provides that, "if it shall be ascertained, in any suit brought on any contract, that a rate of interest has been contracted for greater than is authorized by this act, either directly or indirectly, * * * or that any gift or donation of money, property or other valuable thing has been made * * * to a lender or creditor * * either by the borrower or debtor, or any person for him, the design of which is to obtain for money so loaned * * a rate of interest greater than that specified by the provisions of this act, the same shall be deemed usurious, and shall work a forfeiture of the entire debt so contracted, to the school fund of the county where such suit is brought;" and this prescribes the penalty for violating its provisions. This last section embraces two classes of cases—one where the unlawful interest is contracted for, and the other where it is taken with the design to obtain a greater rate of interest than is prescribed, and may be after the contract is made. The creditor and bankrupt agree that while the $370 was still on the desk, the former asked the latter what he was going to allow him "for the accommodation," and bankrupt then handed back $20, which creditor took, and that it was given or "allowed" for the accommodation. The one per cent. per month was contracted for, for the use of the money; and the "use of the money" was no more nor less than the "accommodation" for which the $20 was given. I must conclude that the case comes within the usury law of the state. That law settles the right of Potter, and determines the legality of his claim. He could not recover it in a state court. The last clause of section twenty-two of the bankrupt act [of 1867 (14 Stat. 527)], declares that "the courts shall reject all claims not duly proved, or where the proof shows the claim to be founded in fraud, illegality or mistake." If the claim of Potter be usurious, it is illegal, because prohibited by a statute which also forfeits the entire debt.

The creditor stands before the court in the attitude of a plaintiff, invoking its jurisdiction to enforce a right which the laws of the state of Oregon deny him. It cannot be claimed that congress intended the bankrupt law as a means of evading a penalty imposed by the law of any state for the violation of its positive prohibitions. Such a construction would permit men every day to take usury and make contracts usurious under the state law, and then come to a court of bankruptcy to enforce them. I think the cases cited by the creditor's counsel in National Exch. Bank v. Moore [Case No. 10,041], and Darby v. Boatman's Sav. Inst. [Id. 3,571], so far as they are applicable, support the view I have taken. In the former of these, it is admitted that in Ohio, where the rate of interest is six per cent., and the penalty for usury is the forfeiture of double the illegal interest charged, the claim for such illegal interest cannot be enforced in a court of bankruptcy. In the opinion of the court we find this language: "There is no reason to doubt that if the statute referred to had stopped with the prohibition of taking or receiving interest in excess of the rate prescribed, a loan made by a bank in conflict with such prohibition could not be enforced. It would unquestionably be held to be an illegal and void act. But the legislature has chosen to prescribe a specific penalty for the illegal act, namely, the forfeiture of double the sum of the entire interest charged or paid, and have not declared that the principal debt should be forfeited." The law of this state not only prohibits the giving or taking of more than one per cent. per month, for the loan or use of money, but provides that if it is done, "the same shall be deemed usurious, and shall work a forfeiture of the entire debt." The same rule which would bar the claim for interest in Ohio, would exclude the whole debt in Oregon. The other case cited is not in conflict with this view. See, also, McKinsey v. Harding [Case No. 8,866]. The claim is disallowed, and costs of the contest are taxed to the creditor, and will be taken from the deposit in court.

Joseph N. Dolph, for creditor.

John Catlin and Presley M. Denny, for assignee.

DEADY, District Judge. Section 23 of the bankrupt act, as above cited, prohibits the allowance of a claim in bankruptcy, which is founded in illegality. In this respect, the act is only in affirmance of the common law. What is or is not an illegal contract or transaction, depends upon the law of the place where the contract was made or the transaction had. The right of the creditor to prove this debt then depends upon the effect to be given to the usury act of the state of Oregon.

It is apparent upon an examination of the books that opinions as to the morality and policy of usury laws have frequently led to their being construed and refined away. The crafty means contrived by the wit and greed of man to evade the law have too often been successful, only because the private opinions and sympathies of courts and juries have interfered with its just and general enforcement.

But in this court, an act of the legislature limiting the rate of interest to be taken for the use of money, will receive as favorable a construction as any other act emanating from that authority, to secure and promote what it deems to be the public good. It is for the law-making power to determine whether the rate of interest shall be limited, and not the courts. An act prohibiting the taking of interest beyond a certain rate should be construed, according to the general rule, with a view to effect its objects and promote justice.

Is a contract to receive more than lawful interest illegal and void under this act? It prescribes the legal rate of interest, and declares that "no more" shall be contracted for or received. This is a prohibition, and any contract contrary thereto is illegal and void, the same as if the act had expressly declared such to be the result. In Bank of U. S. v. Owens, 2 Pet. [27 U. S.] 538, the supreme court held that a contract contrary to a clause in the act incorporating the bank, which forbade it to take a greater interest than six per cent., but did not declare such contract void, was, nevertheless, necessarily illegal and void. In answer to the question, "whether such contracts are void in law upon general principles," the court say:

"The answer would seem to be plain and obvious, that no court of justice can in its nature be made the hand-maid of iniquity. Courts are instituted to carry into effect the laws of a country; how can they, then, become auxiliary to the consummations of violation of law?"

In Harris v. Runnels, 12 How. [53 U. S.] 83, cited and relied on by counsel for creditor, Mr. Justice Wayne says: "The object of all law is to repress vice and to promote the general welfare of society; and it does not give its assistance to a person to enforce a demand originating in its breach or violation of its principles and enactments. Contracts in violation of statutes are void. * * * A statute may either expressly prohibit or enjoin an act, or it may impliedly prohibit or enjoin it by affixing a penalty to the performance or omission thereof. It makes no difference whether the prohibition be express or implied. In either case, a contract in violation of its provisions is void."

But the usury act (section 3) also affixes a contingent forfeiture or penalty to the violation of its terms in this respect, and counsel for the creditor maintains that when such is the case, the ordinary effect of the prohibition is modified or mitigated so far as to leave the contract legal, subject to the penalty imposed for making it.

The case mainly relied on in support of this position is Harris v. Runnels, supra. The case was an action upon a note for the purchase of slaves sold in Mississippi. Defense, that they were brought into the state in violation of a statute of the state which prohibited the bringing therein of convict negroes, and as a means to that end, provided that no slaves should be brought into the state without a certificate, by two freeholders, describing them, and stating that they had not been guilty of certain crimes. The seller and purchaser of slaves brought into the state contrary to the act, were each made liable to a penalty of $100 for every violation thereof.

The court held that the parties to the sale of the slaves were liable for the penalty, but the contract itself was not void, because upon the whole act it did not appear reasonable that such was the intention of the legislature. The court freely admitted the general rule as stated, that a contract made contrary to a prohibition or a penalty, was illegal and void, and added, "the rule is certain and plain; the practice under it has been otherwise. The decisions in the English courts have been fluctuating and counteracting. Those in the courts of our states have followed them without much discrimination."

The court then proceeds to notice some of the contradictions in the application of the rule, and says: "We have concluded, before the rule can be applied in any case of a statute prohibiting or enjoining things to be done, with a prohibition and a penalty, or a penalty only, for doing a thing which it forbids, that the statute must be examined as a whole, to find out whether or not the makers of it meant that a contract in contravention of it should be void, or that it was not to be so. In other words, whatever may be the structure of the statute in respect to prohibition and penalty, or penalty alone, that it is not to be taken for granted that the legislature meant that contracts in contravention of it were to be void, in the sense that they were not to be enforced in a court of justice. In this way the principle of the rule is admitted, without at all lessening its force, though its absolute and unconditional application to every case is denied. It is true, that a statute containing a prohibition and a penalty, makes the act which it punishes unlawful, and the same may be implied from a penalty without a prohibition; but it does not follow, that the unlawfulness of the act was meant by the legislature to avoid a contract in contravention of it. When the statute is silent, and contains nothing from which the contrary can be properly inferred, a contract in contravention of it is void."

The rule furnished by this case seems to be as follows: Where a statute contains both a prohibition and a penalty, a contract or transaction contrary thereto is absolutely il-

legal and void, unless it appears, upon a consideration of the whole act, that the legislature did not so intend.

Let us apply the rule to the case at bar. The act under consideration contains a prohibition against contracting for or receiving more than a certain interest. If this were all, it is admitted that a contract contrary thereto would be totally void. Counsel for creditor claims that the act also contains a penalty, because it provided in section three for forfeiting the entire debt, under certain circumstances, upon which usurious interest has been received or contracted for.

Let this be admitted, and still it follows that an act in contravention of the statute is void, unless the contrary appears from the act itself. What is there in the provisions or object of this act that tends to prove that the legislature did not intend that a transaction in contravention of it should be void?

In Harris v. Runnels, supra, the facts that the act was passed to prevent the importation of negro convicts into the state, and not negro slaves generally, and that the prescribed certificate concerning the importation of slaves generally was only a means to secure that end, and lastly and chiefly, that the penalty prescribed for the violation of the act was merely $100 instead of the forfeiture of the subject-matter of the prohibited sale and purchase, were held sufficient to show that the legislature did not intend to declare the contract of sale absolutely void. The prescribed penalty for the sale of a non-certificated slave being merely $100, while his value was probably ten times that amount, there was much reason for inferring that the legislature thereby evidenced its intention not to punish the party by the further forfeiture of the value of the slave, if the purchaser did not choose to pay the purchase price, as would be the case. in effect, if the contract was held to be void absolutely.

But in this case the primary and palpable object of the legislature is to prevent the giving and receiving more than a certain rate of interest for the loan or use of money, as a thing contrary to the public good. The prohibition is un'qualified, and reaches all cases of usurious interest under whatever name or device, promised, paid or received. But the penalty, which consists of a forfeiture of "the entire debt" to the school fund is contingent upon two things: (1) A suit being brought to recover the debt; and (2) it being ascertained in said suit that the same is usurious.

In effect, there is no penalty imposed by the act for· its violation, except in cases where the debtor declines to pay the debt, and in a suit to enforce payment, it appears that it is usurious. In such case the law converts the action of the creditor into one for the use of the public to whom the forfeiture is given—the school districts of the county.

A debtor may pay a debt tainted with usury with impunity. The law forbids the act, but

prescribes no penalty for disobedience. But if payment of such a debt is sought to be enforced by a "suit," and the fact of its being usurious is "ascertained" or established therein, then the law intervenes, and directs that judgment for the amount of the sum loaned be given for the benefit of the parties for whose use the suit in contemplation of law in such contingency is brought.

The prohibition being absolute and the penalty contingent and remote, it is a question whether this is a case of both a prohibition and a penalty within the rule in Harris v. Runnels. But admitting that it is, the cases are in every other material matter unlike. Here the penalty is contingent upon the action of the debtor, and is equal to the entire debt—neither more nor less. No penalty is imposed upon the debtor; on the contrary, he is relieved from the payment of any interest. So far as the creditor is concerned, the effect is the same as if no penalty had been imposed, for although he may maintain a suit for the usurious debt, it is only for the benefit of another. If no penalty had been provided, it is admitted that the contract being prohibited, would be illegal and void. In either case the creditor loses his debt, unless his debtor chooses to pay it. The conclusion is plain that the intention of the act is to make illegal and void all acts and contracts done or made in contravention of its provisions.

Counsel for creditor also cited National Exch. Bank v. Moore [Case No. 10,041], and Darby's Trustees v. Boatman's Sav. Inst. [Id. 3,571]. The case is commented on in the opinion of the register, and shown to be against the claim of the creditor, so far as applicable to the case. It arose under section thirty of the national banking act (13 Stat. 108), which forbids the taking by the national banks of more than a specified interest, and prescribes a specified penalty for its violation—the forfeiture of the entire interest agreed to be paid, and a liability to pay back twice the amount of any such interest received.

The court, following the rule laid down in Harris v. Runnels, supra, held that the nature and amount of the penalty prescribed for the violation of the act showed that congress did not intend to render void the whole contract upon which the usurious interest had been received or taken, and that as to the principal of the debt, it was valid.

The second cause arose under a clause in the charter of the defendant, which "authorized it to loan the money deposited with her at any rate of interest not exceeding eight per centum per annum."

A greater sum than this having been received upon a loan, it became a question what was the effect of this violation of the law. The argument for the plaintiff was, that the charter of the defendant not having authorized the making of such a loan, it was ultra vires and void. The court held that

only so much of the interest as was in excess of the rate authorized, was illegal and void. The question of usury was not made, and the court held the transaction valid so far as it was authorized by the charter.

The creditor also makes the point upon the facts that the payment of the $20, although contrary to the act, was no part of the original loan, and therefore cannot affect it one way or the other.

Upon the testimony my mind inclines to the conclusion reached by the register, that the payment of the $20 was demanded and made while the transaction was yet incomplete. True, the money and note therefor had literally changed hands, but barely so. Neither, at least the note, had been formally accepted, and I feel quite certain that if the bankrupt had not responded to the creditor's demand for something more, the latter would not be here to-day asking the allowance of this claim.

But the point is not material. It is admitted on all hands that the $20 was paid the creditor on account of the loan—for the accommodation. Section 2 of the act is explicit and comprehensive upon this point. "No person shall directly or indirectly receive * * * any greater sum or value for the loan or use of money than in this act prescribed." Nothing could be plainer than this. It is not necessary that this "greater sum or value" should be contracted for or received at the time of making the loan. If it is received at any time for or on account of such loan or use of the money lent, the case is within the prohibition of the act, and the whole contract or transaction becomes illegal and void.

I do not mean to be understood as holding that a borrower may not manifest his gratitude for a loan, by a free gift to the lender of either money or goods, over and above the lawful interest. The sum so given is not, in fact or contemplation of the act, either paid or received as a consideration for the use or loan of the money. But whether such money passes between the parties as a gift or consideration for the loan in pursuance of an understanding of the parties, is a question of fact in each particular case. 3 Pars. Cont. 114.

It seems to me that whenever the money is received by the lender while the debt remains unpaid, and the relation of creditor and debtor exists, there is a reasonable inference, in the absence of anything to the contrary, that it was paid and received in consideration of the loan, and is usurious. But where, as in this case, it was received within an instant from the making of the loan, if not as a part of it, and that too in pursuance of what amounted to a direct demand by the creditor for something more than legal interest, there is little room to doubt that the money was paid and received in consideration of the loan.

It is said in a text book, that the taking of usurious interest upon a contract for lawful interest will not conclusively imply a prior agreement to that effect, but that it is prima facie evidence thereof. 3 Pars. Cont. 114. Even under this rule, the inference would be that the twenty dollars was paid in pursuance of an understanding of the parties at the time of making the loan, although it appears to have been paid afterward. But the statutes of the different states on the subject of interest vary materially. Under the statute of this state, it is quite clear that unlawful interest received upon a lawful loan, in pursuance of a contract or understanding of the parties, though subsequent in point of time to the making of the loan, makes the debt usurious and the original contract illegal and void.

The general intent to strike at the root of the evil intended to be remedied, is more manifest in section three, which provides that, if in a suit upon any contract it shall appear that even a gift of money has been made or promised to a creditor, the design of which is to obtain for debts due or to become due a rate of interest greater than that allowed by the act, the same—the contract—shall be deemed usurious and the entire debt forfeited.

Another point made for the creditor is, that this court cannot or will not enforce a forfeiture given by the laws of this state to the school districts of this county, and therefore it cannot take cognizance of the alleged illegality of this transaction. For this position, counsel cites Sherman v. Gassett, 4 Gilman, 525. I think the law of this case very questionable. The court was evidently influenced by the idea that the transaction was not oppressive, according to its notions of right, rather than the rule prescribed by the lawmaking power.

But be that as it may, I am unable to perceive the relevancy or force of the objection. This is not a suit or proceeding to enforce a forfeiture, but an objection to the allowance of a claim against a bankrupt's estate because the same is illegal. The transaction being illegal and void by the lex loci, is illegal and void everywhere and in all courts.

Because this court may not have jurisdiction to enforce all the penalties consequent upon this illegal transaction by the laws of the state, it by no means follows that it cannot inquire into its legality when the question arises in a proceeding duly before it. This court has express jurisdiction to allow or disallow claims against the estate of a bankrupt, and in so doing must determine their legality. According to the law of this state, this claim is illegal, and must therefore be rejected.