(96 App. Div. 139.)

## McARDLE v. THAMES IRONWORKS.

(Supreme Court, Appellate Division, Third Department. June 30, 1904.)

1. USE OF FICTITIOUS PARTNERSHIP NAME—RIGHT TO RECOVER ON CONTRACT.

　　Plaintiff is not deprived of his right to recover on his executory contract of sale, because of his transacting business under a fictitious partnership name, in violation of Pen. Code, § 363, making this a misdemeanor.

2. MODIFICATION OF CONTRACT—QUESTION FOR JURY.

　　Where the original contract of sale by plaintiff to defendant was in the form of a duplicate broker's note, the broker being the agent of defendant, and instead of regarding this as a sufficient contract, as might have been done, one of the duplicates was accepted in writing by plaintiff, and both were forwarded by the broker to defendant for acceptance, and defendant, before doing this, according to its testimony, pasted to the duplicate of plaintiff and pinned to its own a printed slip changing the contract, and mailed plaintiff's duplicate thus modified to the broker, and he, according to his testimony, delivered or remailed it to plaintiff in the same condition in which it was received, though he could not recall the printed slip being on it, and the duplicate produced by plaintiff at the trial, though having no slip attached, and though he testified he received none, being claimed to show evidence that a slip was once attached to it—the question of its modification should be submitted to the jury.

Appeal from Trial Term, Albany County.

Action by Patrick J. McArdle against the Thames Ironworks. From a judgment on a verdict for plaintiff, and from an order denying a motion for new trial, defendant appeals. Reversed.

Argued before PARKER, P. J., and SMITH, CHASE, CHESTER, and HOUGHTON, JJ.

Van Santvoord & Wellington, for appellant.

John W. Walsh (Edwin Countryman, of counsel), for respondent.

HOUGHTON, J. The plaintiff, under the name of "M. Donnelly & Co.," contracted in writing, through defendant's agent, to sell to it a quantity of cast-iron borings. Delivery was tendered, and acceptance refused on the ground that the borings were not according to contract, and this action was brought for the purchase price and damages sustained.

The appellant insists at the outset that the plaintiff cannot maintain this action, because at the time of making the contract he was transacting business under a fictitious copartnership name, in violation of section 363 of the Penal Code, which makes such an act a misdemeanor. The later cases are uniform in holding that the mere fact that a person thus carries on his business in violation of the statute does not prevent his recovery upon an executed contract. Gay v. Seibold, 97 N. Y. 472, 49 Am. Rep. 533; Sinnott v. German-American Bank, 164 N. Y. 386, 58 N. E. 286; Wood v. Erie R. R. Co., 72 N. Y. 196, 28 Am. Rep. 195; Loeb v. Fireman's Ins. Co., 78 App. Div. 113, 79 N. Y. Supp. 510; Vandergrift v. Bertron, 83 App. Div. 548, 82 N.

Y. Supp. 153. But it is claimed that the rule is different with respect to an executory contract. We think not. All the cases agree that the statute must be strictly construed, because of its highly penal character, and that it had its foundation in public policy for the protection of the commercial community. In Gay v. Seibold, supra, a similar statute was said to be for the purpose of protecting persons giving credit on the faith of' the fictitious name, and not to protect those obtaining credit from such firm. Taylor v. Bell & Bogart Soap Co., 18 App. Div. 175, 45 N. Y. Supp. 939, is authority for the proposition that, even as to an executory contract the statute is no defense, where the answer does not allege that the defendant was induced by the use of the fictitious name to give credit, or that he was misled to his injury by the use of such name.

The section of the Penal Code referred to does not take away the rights which a person using the fictitious name may have. As is said by Gray, J., in Sinnott v. German-American Bank, supra, "It simply made it a misdemeanor to do what was therein specified, and that is all." The contract which was entered into with the defendant was not an illegal one. The illegality consisted in the use by the plaintiff of a fictitious name. He might be punished for his violation of the law in holding out a false name to the community. If one were misled into giving him credit by reason of the name, or injured because of his misrepresentation, doubtless he could rescind his contract, and reclaim his goods. But Sinnott v. German-American Bank, supra, is a direct authority that even this could not be done where the rights of bona fide purchasers had intervened. In some of the reported cases there can be found expressions of doubt as to the application of the rule in respect to executory contracts, or arguments by way of illustration that the case under consideration involves an executed, rather than an executory, contract; but none of the later cases go to the extent of holding that it does not apply to an executory contract. Upon reason and authority, we think the plaintiff can maintain his action notwithstanding his use of a fictitious firm name in entering into the contract.

But we think the judgment must be reversed because of an error in the exclusion of evidence. The original contract was in the form of a duplicate broker's note, the broker being the agent of the defendant. This was a sufficient contract if the parties chose to so regard it, but they chose to do something in addition. One of the duplicates was accepted, in writing, by the plaintiff in the name of "M. Donnelly & Co.," and this, with the other, was forwarded by the broker to the defendant for acceptance. Before doing so, the defendant pasted to the duplicate of the plaintiff and pinned to its own a printed slip, which is claimed to enlarge and modify the contract. The duplicate of the plaintiff, thus modified, was mailed to the broker, and by him delivered to or remailed to the plaintiff, as he testifies, in the same condition in which it was received, although he cannot recall the printed slip being attached. If the parties chose not to rely on the contract of the agent alone, but elected to require acceptance by both the purchaser and the seller, each had the right to propose a change of the contract before final acceptance and delivery, and any modification thus made and assented to would be binding. The defendant could, therefore,

modify the contract by interlineation, or by pasting a printed slip thereon; and if the plaintiff assented to it expressly or by tender of delivery thereunder he would be bound to deliver such borings as the modified contract called for. The duplicate produced by the plaintiff on the trial had no slip attached, but it was claimed the paper showed evidence of its having once been, in corroboration of the defendant's testimony that it actually had, and the defendant insisted it had the right to place the slip in evidence, and have the jury pass upon the question as to whether the parties had thus modified the original contract before acceptance. The court finally excluded it, against the defendant's objection and exception, and we think this ruling was erroneous. It is true that plaintiff testified such modified contract was never received by him, but the defendant's testimony showed the slip was attached when the acceptance was given, and that in such condition it was mailed to the broker for delivery to plaintiff; and the broker testified that whatever he received he delivered to or mailed to plaintiff. The evidence is not clear as to whether this delivery was made by messenger or by mail. In either event the plaintiff received the main contract, and must have received the printed slip if it was in fact attached. If by mail, the presumption arises that it was received as directed and sent. The presumption is that a letter duly mailed is received by the person to whom it is directed. Oregon Steamship Co. v. Otis, 100 N. Y. 446, 3 N. E. 485, 53 Am. Rep. 221. In the absence of proof to the contrary, this presumption is sufficient evidence of that fact. Ackley v. Welch, 85 Hun, 178, 32 N. Y. Supp. 577. This presumption and the fact of the attaching and forwarding by the broker in an unchanged condition, the defendant had a right to have the jury consider in opposition to the testimony of the plaintiff that he never received the contract thus modified by the attached slip. The trial court regarded the printed slip in the light of a parol modification, and this controlled him in his ruling. Doubtless, the original duplicate broker's note was such a contract as could not be modified by any parol agreement prior to or at the time of its execution and delivery. The attaching of an unsigned written or printed slip is not a parol modification, and, if so treated by the parties, it becomes a part of the written contract, and can be regarded in no other light.

But it is said that the defendant was permitted on the trial to prove everything with respect to the inferior quality of the borings that he could have done had the slip been regarded as part of the contract. Assuming that the jury should find that the contract, as modified by the slip, was the one upon which the minds of the parties finally met, and upon which they acted, quite different questions might arise than those involved in the mere merchantability of the article tendered.

Other questions are urged by the appellant, which may not again arise, and, in view of our conclusion that a new trial must be granted, it is unnecessary to discuss them.

The judgment and order should be reversed, and a new trial granted, with costs to the appellant to abide the event. All concur.