W. H. AND L. B. JENNETTE, TRADING AS JENNETTE BROS. CO., v. ELISHA COPPERSMITH AND WIFE, ATTIE.

(Filed 18 September, 1918.)

**1. Statutes, Penal —Interpretation—Partnership—"Assumed Name."**

Section 1, chapter 77, Laws of 1913, prohibiting, in general terms, the conducting, carrying on, or transacting a business in this State under an assumed name, without filing a certificate with the clerk of the court of the county, showing the name of the owner, making the forbidden act a misdemeanor, is of a highly penal character, and its meaning will not be extended by interpretation to include cases that do not come clearly within its provision.

**2. Statutes—Partnership—"Assumed Name"—Contracts, Illegal.**

Where a partnership is conducted, under an "assumed name," without having complied with the requirements of section 1, chapter 77, Laws 1913, in having filed the certificate with the clerk of the court of the county, its contracts are not enforcible in the courts of this State.

**3. Statutes—Partnership—"Assumed Name"—Interpretation—Surname.**

Where brothers are engaged in business under the name of Jennette Brothers Company, the word "company" may be taken to denote a partnership, and will not come within the provision of the statute requiring that a business conducted under an "assumed name" must be registered with the clerk of the Superior Court of the proper county, showing the business name of the owner; the words, "assumed name," meaning a fictitious name and not applying when the true surname of the partners are correctly given, and afford a reasonable and sufficient guide to correct knowledge of the individuals composing the firm.

ACTION tried before *Bond, J.,* and a jury, at January Term, 1918, of PASQUOTANK.

The relevant facts are stated in the case on appeal, as follows:

The plaintiffs, W. H. Jennette and L. B. Jennette, are brothers and partners, trading as Jennette Brothers Company, and are residents of Pasquotank County, North Carolina.

During the year 1914 one W. B. Halstead, a farmer, went to plaintiffs and requested them to furnish him with guano and fertilizers to go under his crop, at which time plaintiffs learned that defendants had a mortgage on the personal property and crops of said Halstead, and, knowing this, the plaintiffs refused to furnish said Halstead with guano and fertilizers unless the defendants would release the said Halstead from the operation of the mortgage they had against him, or at least consent and allow the plaintiffs' mortgage to come in ahead of the defendants in this cause.

After the plaintiffs refused to furnish the said Halstead with guano and fertilizers, the defendants released, in writing, their mortgage from operating ahead of the plaintiffs' mortgage on the property of the said Halstead, and particularly did the defendants write plaintiffs that they

would let plaintiffs come in ahead of their mortgage if they would furnish said Halstead with guano and fertilizers. The paper-writing was, in words and figures, as follows:

MESSRS. JENNETTE BROS. COMPANY.

DEAR SIRS:—You can let Mr. W. B. Halstead have what guano he wants, and we will let you come in ahead of our mortgage.

. 28 March, 1914.                         E. COPPERSMITH: .

It was admitted that E. Coppersmith signed this for his wife, Attie, and himself. Whereupon plaintiffs furnished, on 1 April, 1914, the said Halstead with guano and fertilizers to the amount of $116.50 and took a mortgage on the personal property and crops of said Halstead, which was the identical property covered by the defendants' mortgage.

Plaintiffs would not have furnished said Halstead with guano and fertilizers if defendant had not allowed the mortgage of the plaintiffs to come in as a prior lien to the mortgage of the defendants, and, by reason of the defendants allowing plaintiffs to come in ahead of their mortgage, the plaintiffs were induced to furnish and did furnish the said Halstead with fertilizers.

Subsequent to plaintiffs taking their mortgage on the personal crops of the said Halstead, which was the identical property covered by the defendants' mortgage, on or about 6 January, 1916, the defendants took the said personal property of the said Halstead and sold the same at their residence and converted the proceeds of said sale to their own use, and have never turned over any of the proceeds or any of the property to the plaintiffs.

Halstead has never paid to the plaintiffs any part of the note secured by the mortgage, nor has the defendant paid any part of the proceeds of said sale or turned any of the property over to the plaintiffs. Demand has been made by the plaintiffs, both on Halstead and the defendants, for the property or payment for the same.

(It was admitted that the property sold by the defendants was of sufficient value to equal the principal and interest claimed by the plaintiffs to be due them for guano furnished to said Halstead.)

It was also in evidence that plaintiffs were not registered as a partnership, under chapter 77, Public Laws 1913, until after commencement of this action.

When plaintiffs rested their case the defendants moved for judgment as of nonsuit. Motion denied, and defendants excepted.

Verdict and judgment for plaintiff, and defendant excepted and appealed, assigning for error the failure of plaintiffs to properly register their trade name, as required by chapter 77, Laws 1913.

*Ehringhaus & Small for plaintiff.*
*Ernest L. Sawyer for defendant.*

Hoke, J.  Section 1, chapter 77, Laws 1913, in general terms, prohibits the conducting, carrying on, or transacting a business in the State under an assumed name, etc., without filing a certificate with the clerk of the court in the county or counties where such business, etc., is to be carried on, showing the business name of the owner, etc., and in a subsequent section of the statute the forbidden act is made a misdemeanor. In *Courtney v. Parker,* 173 N. C., 479, it was held that contracts made, etc., in the case of a business conducted in violation of the statute, could not be enforced in the courts.  While the court felt constrained to give this construction, on the ground, chiefly, that the act was a police regulation designed and intended to protect the general public from fraud and imposition, under such an interpretation the act is of such a highly penal character that it should not be extended or held to include cases that do not come clearly within its provision.  A recognized meaning of the word "assume" gives the impress of an act calculated to mislead or baffle inquiry.  In the Century Dictionary the sixth definition is given as follows: "To take fictitiously; pretend to possess, as to assume the garb of humility," citing Hamlet's injunction to the queen: "Assume a virtue if you have it not."  Act III, Scene 4.  And the whole scope and purpose of the act shows that the word was used in this sense.  The term "company" is not an infrequent nor an inapt word to denote a partnership.  *Clark v. Jones & Bro.,* 87 Alabama, 474; 1 Words and Phrases (Second Series), 745.  And the title of plaintiffs' firm, Jennette Bros., Company, being a partnership conducted under that name and style, giving as it did the true surname of its members, affording a reasonable and sufficient guide to correct knowledge of the individuals composing the firm, should not be considered an "assumed" name, within the meaning and purpose of the law.

We are of opinion that the cause has been properly decided, and the judgment for plaintiff is affirmed.

No error.