Argued September 24, affirmed November 9, 1920.

## UHLMANN v. KIN DAW.*

(193 Pac. 435.)

Contracts—Agreement Conflicting With Statute not Necessarily Void,

1. If a statute having a penalty and prohibition, express or implied, or only a penalty or only a prohibition, is silent, and contains nothing from which the contrary is to be inferred, an agreement which conflicts with the statute is void, but on finding a statute, with either penalty or prohibition, or both, the court is not immediately barred from further inquiring as to whether a contract is void; the pertinent inquiry in all cases being the legislative intent.

Contracts—Contract in Contravention of Statute may be Held Legal In Accordance With Legislative Intent.

2. In the absence of declaration in a statute that a contract in contravention of it is void, the court may take the statute by its four corners and consider its terms, its object, the evil it was enacted to remedy, and the effect of holding agreements in violation of it void, for the purpose of ascertaining whether it was the legislative intent to make such agreements void, and if from all these considerations it is manifest that the lawmakers had no such intent, the agreement should be held legal and enforceable.

Partnership—Agreements by Firm Offending Against Statute as to Doing Business Under Assumed Name not Void.

3. Laws of 1913, page 270, requiring the true name of the persons to be filed when doing business under an assumed name, etc., does not render void agreements entered into by offending partnership, especially where the partnership gives and does not obtain credit.

From Marion: GEORGE G. BINGHAM, Judge.

Department 1.

This is a suit to foreclose a mortgage on a leasehold estate and a crop of hops. William Uhlmann, William J. Wannamaker, Ferdinand Goebel, and J. W. Kaufmann are partners doing business under the firm name of S. & F. Uhlmann. The partners reside in the City of New York, and their principal place of business is in that city, although the firm has

---

*Authorities discussing the question of validity of contract made by individual or partnership under an assumed name in violation of statute are collated in note in L. R. A. 1915D, 988.

REPORTER.

for a long time transacted business in Oregon. George H. Benedict, who resides in Portland, Oregon, and who maintains an office there, has been acting as agent for the partnership since 1907, and he acted as such agent and was the sole representative of the firm in all the business transacted between Kin Daw and the partnership.

Kin Daw, a Chinaman, was the lessee of a hop farm located in Marion County. His lease covered a period of several years. Beginning with 1914, the partnership advanced moneys to Kin Daw and furnished him with supplies from time to time for use on the hop farm. On March 18, 1916, Kin Daw owed the partnership $2,835. Benedict, acting as agent for the partners, was unwilling to advance additional moneys or furnish any more supplies unless the management of the hopyard was given to some satisfactory person. The parties then adjusted their differences by entering into an agreement, dated March 16, 1916, under the terms of which Kin Daw was to transfer his lease to C. W. A. Jette, as trustee, for the purpose of having Jette manage the hopyard, and accordingly the lease was assigned to Jette, as trustee. The contract also provided that Jette, as trustee, and Kin Daw should sell, and the partnership should buy, for a stipulated price, 20,000 pounds of hops in each of the years 1916, 1917, and 1918, and that the buyer should advance to the sellers in each of these years specified sums of money. The 20,000 pounds contracted for constituted only a portion of the entire crop raised. By force of other terms contained in the agreement, Jette, as trustee, and Kin Daw, for the purpose of securing $2,835, the sum then due, and moneys "to be paid," transferred and mortgaged to the partners "the entire crop of

hops growing or to be grown upon said lands in the years 1916, 1917, and 1918, and also all the sellers' right, title and interest in and to the said lands.''

The partnership furnished moneys and each year purchased the quantity of hops as agreed upon. After making allowance for the portions of the crops purchased by the firm, a balance of $14,566.60 was found to be due the partnership on November 1, 1918; and subsequently the partners commenced this suit to recover the amount due and to foreclose the mortgage. Kin Daw filed a plea in abatement and an answer. It will not be necessary to notice the answer. In the plea in abatement Kin Daw alleges that the plaintiffs are not entitled to maintain this suit, for the reason that they failed to file a certificate of their assumed business name, as required by Chapter 154, Laws of 1913. The suit resulted in a decree for $14,566.60, with interest, and for the foreclosure of the mortgage. Kin Daw appealed. AFFIRMED.

For appellant there was a brief over the names of *Mr. E. B. Seabrook* and *Mr. J. C. Simmons,* with an oral argument by *Mr. Seabrook.*

For respondents there was a brief over the name of *Messrs. Teal, Minor & Winfree,* with an oral argument by *Mr. A. B. Winfree.*

HARRIS, J.—The papers which were executed on March 16, 1916, were signed and delivered in Portland, Multnomah County; while, as already stated, the hop farm is located in Marion County, and the partnership's main office is in the City of New York. A certificate of the partnership's assumed name was filed in Marion County on January 27, 1916; and on

March 8, 1918, subsequent to the execution of the agreement and mortgage, but prior to the commencement of this suit, a like certificate was filed in Multnomah County. The plea in abatement filed by Kin Daw was predicated on the theory that the failure to file a certificate in Multnomah County, where the papers were executed, prior to March 16, 1916, rendered the agreement and mortgage void under the provisions of Chapter 154, Laws of 1913.

The statute contains six sections. Sections 3 and 4 are not material here, for the reason that one relates to the filing of a certificate when a change occurs in ownership, and the other exempts from the operation of the statute corporations, limited partnerships and such partnerships as include in their business names the true names of all the parties conducting the business or having an interest in it. The other sections are as follows:

"Section 1. *True Name to be Filed When Business Under Assumed Name.*—No person or persons shall hereafter carry on, conduct or transact business in this state under any assumed name or under any designation, name or style, corporate or otherwise, other than the real and true name or names of the person or persons conducting such business or having an interest therein, unless such person or all of such persons conducting said business or having an interest therein, shall file a certificate in the office of the county clerk of the county or counties in which said business is to be conducted, which certificates shall set forth the designation, name or style under which said business is to be conducted, and the true and real name or names of the party or parties conducting or intending to conduct the same, or having an interest therein, together with the postoffice address or addresses of said person or persons. Such certificate shall be executed and acknowledged by the party or parties conducting, or intending to conduct said busi-

ness, or having an interest therein, before an officer authorized to take acknowledgment of deeds.

"Section 2. *Certificate to be Filed Before Commencing Business.*—Any person or persons now conducting any business under such assumed name, or under any designation, name or style other than the true and real name or names of all the parties having an interest therein, shall file and cause to be recorded and indexed in a book to be kept for that purpose, a certificate, as provided for in Section 1 of this act, within 30 days after this act shall take effect, and persons hereafter conducting or intending to conduct any business, as set forth in section 1, shall, before commencing business, file and record such certificate in the manner hereinbefore prescribed. * *

"Section 5. *Compliance Condition Precedent to Bringing Suit.*—No person or persons carrying on, conducting or transacting business as aforesaid, or having any interest therein, shall hereafter be entitled to maintain any suit or action in any of the courts of this state without alleging and proving that such person or persons have filed a certificate as provided for in section 1, and failure to file such certificate shall be *prima facie* evidence of fraud in securing credit.

"Section 6. *Penalty Clause.*—Any person violating any of the provisions of this act, shall be guilty of a misdemeanor, and upon conviction thereof, shall be punished by a fine not exceeding $100."

Statutes are to be found in many of the states regulating the conduct of business under an assumed name. Each of these statutes which we have examined contains a section that is either identical with or substantially like Section 1 of our statute. However, the expressed penalty for failure to observe the statute is not the same in all states. In some jurisdictions, as in California, Oklahoma, Colorado, Ohio, Montana, and South Dakota, for convenience referred to herein as the first group, a person or per-

sons doing business under an assumed name cannot, in the language of the statute, "maintain" or "commence nor maintain" an action upon any contracts made or transaction had in the assumed name "until" a certificate is filed or, as is sometimes required, filed and published. In some of these jurisdictions it is expressly provided by the statute that contracts made prior to the filing of the certificate may be sued upon and enforced after such filing; while in the remaining jurisdictions belonging to the first group the same result has been reached by judicial decision. In states having legislation like that of California, it is plain that it was not the intent of the lawmakers to taint the agreement or transaction so as to make it illegal and unenforceable, and that the only penalty intended is a conditional suspension rather than an absolute denial of legal remedies, even though in some of those states, as in Colorado, failure to file the certificate is declared to be a misdemeanor punishable by fine or imprisonment. Civil Code of California (Deering 1915) Section 2468; *Roullard* v. *Gray,* 38 Cal. App. 79 (175 Pac. 479); Compiled Laws of Oklahoma 1909, Sections 5023, 5025; *Baker* v. *Van Ness,* 25 Okl. 34 (105 Pac. 660); *Bleecher* v. *Miller,* 40 Okl. 374 (138 Pac. 809); Colorado Laws 1897, page 248, Chapter 65; *Elgin Jewelry Co.* v. *Wilson,* 42 Colo. 270 (93 Pac. 1107); *Wallbrecht* v. *Blush,* 43 Colo. 329 (95 Pac. 927); Bates' Annotated Statutes of Ohio (6 ed.), Sections 3170–6 (Section 6); *Cobble* v. *Farmers' Bank,* 63 Ohio St. 528 (59 N. E. 221); Revised Codes of Montana 1907, Sections 5504, 5509; *Reilly* v. *Hatheway,* 46 Mont. 1 (125 Pac. 417); Revised Civil Code of South Dakota, Sections 1763, 1764; *Heegaard* v. *Dakota Loan &*

*Trust Co.,* 3 S. D. 569 (54 N. W. 656); *Bovee* v. *De Jong,* 22 S. D. 163 (116 N. W. 83).

There is a second group of states in which the failure to file a certificate is declared to be a misdemeanor, and the only penalty in terms prescribed for such failure is fine or imprisonment. In this group of states there is no express declaration in the statute that any contract or transaction is prohibited or void, or that a suit or action cannot be "commenced" or "maintained," or that suit or action cannot be commenced or maintained "until" a certificate is filed. In brief, in these states the sole penalty expressly named by the statute is fine or imprisonment. New York Statutes, 1900, Chapter 216, page 452; *Doyle* v. *Shuttleworth,* 41 Misc. Rep. 42 (83 N. Y. Supp. 609); *Black* v. *New York Life Ins. Co.,* 70 Misc. Rep. 532 (127 N. Y. Supp. 409); *McArdle* v. *Thames Iron Works,* 96 App. Div. 139 (89 N. Y. Supp. 485). Revised Statutes of Louisiana, Sections 2668, 2669; *Kent* v. *Mojonier,* 36 La. Ann. 259; *Wolf* v. *Joubert,* 45 La. Ann. 1100 (21 L. R. A. 772, 13 South. 806); Laws of New Jersey, 1906, Chapter 240; *Rutowsky* v. *Bozza,* 77 N. J. Law, 724 (73 Atl. 502). Connecticut Public Acts, 1911, Chapter 27, page 1586; *Sagal* v. *Fylar,* 89 Conn. 293 (93 Atl. 1027, L. R. A. 1915E, 747). Public Acts of Michigan 1907, Act No. 101; *Cashin* v. *Pliter,* 168 Mich. 386 (134 N. W. 482, Ann. Cas. 1913C, 697). Kentucky Statutes, Section 199b; *Hunter* v. *Patterson,* 162 Ky. 778 (173 S. W. 120, L. R. A. 1915D, 987). Burns' Annotated Statutes of Indiana 1914, Section 9711a et seq.; *Horning* v. *McGill* (Ind.), 116 N. E. 303; *Humphry* v. *City Nat. Bank* (Ind. App.), 127 N. E. 162. Laws of North Carolina, Session 1913, Chapter 77; *Courtney*

v. *Parker,* 173 N. C. 479 (92 S. E. 324); *Jennette* v. *Coppersmith,* 176 N. C. 82 (97 S. E. 54).

There is yet a third class to which may be assigned all states having statutes which, besides declaring that failure to file a certificate "shall be *prima facie* evidence of fraud in securing credit," make failure to file a certificate a misdemeanor punishable by fine or imprisonment, and as an additional penalty declare that no person or persons shall be entitled to "maintain" any suit or action without alleging and proving the filing of a certificate. Oregon belongs to this third class. Our statute is almost identical with that of Washington, except that in the latter state the statute does not make failure to file a certificate a misdemeanor punishable by fine or imprisonment. However, the Supreme Court of Washington, after pointing out the fact that it was clear from the language and title of the act that the legislature intended to provide a penalty, but through inadvertence omitted to do so, has, when determining the effect of the statute upon contracts, apparently treated and applied the act as though it in reality contained such penalty; and therefore, for present purposes, we may with propriety place Washington in the third class. 2 Remington & Ballinger's Ann. Codes and Statutes of Washington, Sections 8369–8373; *Sutton & Co.* v. *Coast Trading Co.,* 49 Wash. 694 (96 Pac. 428); *Malfa* v. *Crisp,* 52 Wash. 509 (100 Pac. 1012); *McGillivray* v. *Columbia Salmon Co.,* 104 Wash. 623 (177 Pac. 660).

An illegal agreement does not attain to the dignity of a contract, within the meaning of the term "contract" as legally defined, because it is void, and therefore unenforceable. The agreement is an illegal one if the taint of illegality manifests itself

in the consideration, or in a promise expressed in the agreement, or in the purpose to which the agreement is applied: 13 C. J. 410. An agreement is illegal if it is contrary to law, morality or public policy: 6 R. C. L. 693. Plain examples of illegality are found in agreements made in violation of some statute; and, stating the rule broadly, an agreement is illegal if it violates a statute or cannot be performed without violating a statute.

Statutes present themselves in various forms. Some contain a provision expressly prohibiting an act, without also expressing a penalty for the doing of the prohibited act. Others express a penalty and also in terms express a prohibition. Some prescribe a penalty only, and do not in terms express a prohibition; and in that case a prohibition may be implied, and if a prohibition is implied it is as effective as an express prohibition.

1, 2. The rule that an agreement is illegal and unenforceable if it conflicts with the provisions of a statute is not inexorable and unbending. If a statute having a penalty and a prohibition, express or implied, or only a penalty or only a prohibition, is silent and otherwise contains nothing from which the contrary is to be inferred, then an agreement which conflicts with the statute is void. However, upon finding a statute with either a penalty or a prohibition, or both, the court is not immediately debarred from further prosecuting an inquiry as to whether an agreement is void and unenforceable in a court of justice: *Harris* v. *Runnels,* 12 How. 79, 84 (13 L. Ed. 901, see, also, Rose's U. S. Notes). The inquiry is as to the legislative intent, and that may be ascertained, not only by an examination of the express terms of the statute, but it may also be im-

97 Or.—44

plied from the several provisions of the enactment. Of course, if a statute expressly declares that an agreement made in contravention of it is void, then the inquiry is at an end; but, in the absence of such a declaration, the court may take the statute by its four corners and carefully consider the terms of the statute, its object, the evil it was enacted to remedy, and the effect of holding agreements in violation of it void, for the purpose of ascertaining whether it was the legislative intent to make such agreements void; and if from all these considerations it is manifest that the lawmakers had no such intention, the agreements should be held to be legal contracts and enforceable as such: *Bank of British Columbia* v. *Page*, 6 Or. 431, 434; *Hirschfeld* v. *McCullagh*, 64 Or. 502 (127 Pac. 541, 130 Pac. 1131); *Columbia Rock Co.* v. *Hibernia Sav. Bank*, 86 Or. 536, 542 (169 Pac. 88); *Harris* v. *Runnels*, 12 How. 79, 84 (13 L. Ed. 901); *Dunlop* v. *Mercer*, 156 Fed. 545 (86 C. C. A. 435); *Model Heating Co.* v. *Magarity*, 2 Boyce (Del.), 459 (L. R. A. 1915B, 665, 81 Atl. 394); *Pangburn* v. *Westlake*, 36 Iowa, 546; 6 R. C. L. 109; *In re Pittock*, 2 Sawy. 416 (Fed. Cas. No. 11,189). It must be conceded that in many jurisdictions the courts will, upon encountering a statute containing a penalty and an express or implied prohibition or a penalty only, at once and without further inquiry pronounce an agreement conflicting with such statute void and unenforceable; but in Oregon, prior precedents made by state and federal courts, following the doctrine stated in *Harris* v. *Runnels*, 12 How. 79, 84 (13 L. Ed. 901), give sanction to the rules as we have stated them: *Bank of British Columbia* v. *Page*, 6 Or. 431; *Hirschfeld* v. *McCullagh*, 64 Or. 502 (127

Pac. 541, 130 Pac. 1131); *Kern* v. *Feller,* 70 Or. 140, 151 (140 Pac. 735); *Columbia Rock Co.* v. *Hibernia Sav. Bank,* 86 Or. 536, 542 (169 Pac. 88); *In re Comstock,* 3 Sawy. 218 (Fed. Cas. No. 3077).

In the states which we have enumerated as belong-ing to the second group there is a diversity of judicial opinion as to whether an agreement is void because in conflict with the assumed name statute. In New York, followed by Louisiana, New Jersey, and Connecticut, the rule is that an agreement is not void if made by persons who have failed to file a certificate of their assumed business name; while in Michigan, followed by Kentucky, Indiana, and North Carolina, such an agreement is void and un-enforceable. The conclusion reached by the New York courts was influenced by the penal character of the statute, and by reason of the further fact that the statute had its foundation in public policy for the protection of the commercial community; and many of the cases point out and emphasize the differ-ence between the position occupied by a partnership obtaining credit and one giving credit. In Michigan, and in the concurring jurisdictions, the courts have taken and applied the view that there can be no recovery on an agreement made in contravention of a statute, the violation of which is prohibited by a penalty.

There is yet another thought which is frequently noticed by courts. A statute may have as its primary purpose the prohibition of an act or acts in a given field; or, on the other hand, the statute may have for its primary purpose the imposition of duties which are entirely collateral to a given act or agree-ment arising out of it: 6 R. C. L. 700; *Washburn Mill Co.* v. *Bartlett,* 3 N. D. 138, 144 (54 N. W. 544).

To this class of cases belongs *Hirschfeld* v. *Mc-Cullagh,* 64 Or. 502 (127 Pac. 541, 130 Pac. 1131). There are some authorities which, without recognizing the doctrine announced in *Harris* v. *Runnels,* 12 How. 79 (13 L. Ed. 901), recognize as a controlling or at least as a very persuasive circumstance the fact that the statute only deals with a collateral duty: *Sagal* v. *Fylar,* 89 Conn. 293 (93 Atl. 1027, L. R. A. 1915E, 747).

3. Let us now turn to our statute, and in the light of the rules of construction governing in this jurisdiction . ascertain, if we can, whether the legislature intended that an agreement made by a partnership prior to filing a certificate is void and therefore unenforceable. At the very beginning of the inquiry we must remind ourselves that we are dealing with a penal statute; and in this connection it is apropos to say that when called upon to determine the scope of the operation of this sort of statute, courts, whether following the New York rule or adhering to the Michigan doctrine, have applied a strict rule of construction when fixing the limits and boundaries of the field in which the statute shall operate. Furthermore, the right of persons to do business as partners is a common-law right; and hence we are now dealing with a statute which is in derogation of a common-law right. Moreover, it is not the primary purpose of the statute to prevent the transaction of business. This enactment is not at all akin to a statute penalizing gambling, for there the primary purpose is to prevent every person from gambling anywhere, any time. Here the primary purpose is, not to prevent business, but to require the performance of a statutory duty which is entirely collateral to any agreement that may arise

out of any business transaction. Again, the consequences which the statute attaches to a failure to file a certificate are inconsistent with any legislative intent to avoid agreements. The statute specifies three consequences: (1) Punishment by fine; (2) a rule of evidence, which is that failure to file the certificate shall be *prima facie* evidence of fraud in securing credit; and (3) inability to maintain a suit or action.

The rule of evidence applies when a person or persons offending the statute is sued by a party who has given, not received, credit. In no state has it been ruled that the statute has a bilateral effect; but on the contrary, even in those jurisdictions where an agreement is treated as void, the statute is given a unilateral effect only. In other words, an agreement made with an offending partnership, if void and unenforceable, is only so in the hands of the partnership, and is valid and enforceable in the hands of, the other party.

The act does not in terms say that any agreement made by an offending person or persons is void; and there is a strong implication to the contrary, for, when declaring that suit or action cannot be maintained, the statute in effect suspends the right to enter the courts until such time as the offending person or persons comply with the statute by filing the certificate. If an agreement is void when made by one failing to file a certificate, why declare in a statute that a suit cannot be maintained? The fact that the legislature has expressly said that a suit or action cannot be maintained is a strong circumstance pointing to the fact that the legislative mind assumed that an agreement would be valid, and, in the absence of some express legislative declaration to the con-

trary, would be enforceable. The statute, as we construe it, merely affects the capacity of the partnership to sue. In brief, as we interpret the statute, it was not the intention of the legislature to make agreements entered into by offending partnerships void, especially where the partnership gives and does not obtain credit. Our conclusion is fortified by a like conclusion reached by the Supreme Court of Washington, when dealing with a statute which, with the exception previously mentioned, is almost identical with ours. Moreover, this court has already adjudged that our statute merely disqualified the parties from suing, and that the defect is waived by failing to answer, or to demur in case the defect appeared upon the face of the pleadings: *Beamish* v. *Noon,* 76 Or. 415, 420 (149 Pac. 522); *Shucking* v. *Young,* 78 Or. 483, 495 (153 Pac. 803); *Benson* v. *Johnson,* 85 Or. 677, 680 (165 Pac. 1001, 167 Pac. 1014); *Columbia River Door Co.* v. *Todd,* 90 Or. 147, 152 (175 Pac. 443, 860). See, also, *Balfour, Guthrie & Co.* v. *Knight,* 86 Or. 165 (167 Pac. 484); *Kohler & Chase Co.* v. *Savage,* 86 Or. 639, 648 (167 Pac. 789). It would be utterly inconsistent with the reasoning of our prior adjudications to hold that any agreements or business transactions between the plaintiff and Kin Daw were void. If such agreements and transactions were illegal and on that account void, then the illegality would go to the quality of the right asserted, rather than to the qualification of the person asserting it. The cause of action, rather than the capacity of the party alleging it, would be affected; and therefore, failure to demur to a complaint, revealing an agreement which is void because of illegality, or failure to allege

the defect in the answer if it has not appeared in the complaint, would not operate as a waiver.

Our conclusion is that failure to file the certificate affects only the qualification of the person to sue, and that upon filing a certificate the disqualification is removed, and a suit or action may be maintained on a contract made before or after such filing.

The decree is affirmed.                AFFIRMED.

McBRIDE, C. J., and BENSON and JOHNS, JJ., concur.