Argued October 16, decided November 12, 1912; rehearing granted January 21, 1913.

On Rehearing Former Opinion Approved April 1, 1913.

### HIRSCHFELD *v.* McCULLAGH.*

(127 Pac. 541.)
(130 Pac. 1131.)

**Appeal and Error—Review—Matters Not Necessary to Decision.**

1. On appeal from a final judgment, where it appeared that the court entered two orders in a case, one dismissing a plea in abatement so called, and the other rendering a final judgment against a defendant as for want of an answer, it is unnecessary to decide whether the plea of the defendant was in bar or in abatement, since, if it was in abatement, the ruling dismissing it was an interlocutory order, which was reviewable on appeal from the final judgment, and, if in bar the dismissal was properly part of the final judgment, the splitting of which into two journal entries could not affect the case.

**Corporations—Place of Contract.**

2. Where an offer to sell the stock and good will of a branch of a foreign corporation were sent by mail to the defendant in this State where he and the goods then were from outside the State, the acceptance thereof either by telegraph or mail completed the contract, and constituted the transaction of business

within the State, although a note in part payment was sent out of the State to the corporation's home office, within the inhibition of the statute of this State relating to the duties of foreign corporations transacting business in this State.

### Corporations—Foreign Corporations—Doing Business in State.

3. Where defendant in an action on a note had purchased the stock and good will of a foreign corporation and its stock of goods which was situated in this State, where the offer of sale was accepted and gave the note in part payment, the fact that it does not appear that defendant gave a chattel mortgage, as suggested in the offer, to secure the indebtedness evidenced by the note, cannot be set up to obviate the defense that the corporation had no right to do business in the State on the ground that the transaction was not completed in this State, where it appears that the corporation has negotiated the note after receiving payments on it.

### Corporations — Foreign Corporations — Right to Sue — Public Policy.

4. A foreign corporation which had not complied with the statute requiring certain things before it would be allowed to transact business or to sue in this State, sold a branch of its business and good will in this State, and as part payment received a note, which was sent to its home office. Held, that the note was a part of the transaction in Oregon carried out contrary to its laws and the public policy, on which account the courts will not aid in its collecting.

### Contracts—Public Policy.

5. Where a contract, although valid elsewhere, is contrary to the public policy of this State as declared by its laws, the courts of this State will not enforce the contract, since the law of the forum governs as to the remedy.

### ON REHEARING.

### Corporations—License Fees — Foreign Corporations — Constitutional Law.

1. Section 6707, L. O. L. (Session Laws 1903, p. 43, § 5), in so far as it requires the payment of a license fee based upon the whole amount of the capital stock of a foreign corporation, whether employed within the State or not, is unconstitutional and void.

**Courts—Federal Questions—Controlling Decisions.**

2. Whether a State statute providing a license fee for foreign corporations based upon the whole amount of capital stock whether employed within the State or not violates the United States Constitution is a federal question, and a holding of the United States Supreme Court is controlling on the State courts.

**Corporations—Foreign Corporations.**

3. Section 6726, L. O. L., requiring the appointment of a resident attorney by foreign corporations, should be construed with Section 6707, requiring a report by such corporations to the Secretary of State, giving the name of such attorney among other things, and prescribing a penalty for failure to file a report, and a failure to appoint such attorney does not render contracts void, but renders it impossible to file the required report, for which a penalty is provided.

**Corporations—Foreign Corporations—Entrance Fee—Right to Sue.**

4. The entrance fee of $50 required of foreign corporations is reasonable, and under the express provisions of Section 6708, L. O. L., the right of a foreign corporation to maintain an action in the State is suspended until such fee is paid.

**Corporations—License Fees—Pleading—Abatement of Action.**

5. Under Section 6709, L. O. L., providing that the objection that a plaintiff foreign corporation had not complied with Section 6708 as to the payment of fees could be raised any time before trial, such objection must be raised by plea in abatement.

**Corporations—Delinquent Corporations—Assignment—Defenses.**

6. Where a foreign corporation which has not yet paid the entrance fee required by statute assigns a note after maturity, the assignee takes the note subject to such defense, but under Section 6708, L. O. L., providing that, while such delinquencies continue, the right to sue shall be deemed to be in abeyance, such defense fails when such fee has been paid.

---

* As to time and place of consummation of contract when offer by letter accepted by telegram, or *vice versa,* see note in 6 L. R. A. [N. S.] 1016.

As to the right of a foreign corporation which has not complied with local laws to defend action, see note in 17 L. R. A. [N. S.] 1117.

On the effect upon the right of a foreign corporation to maintain suit,

of compliance with local law after suit is instituted, see notes in 14 L. R. A. [N. S.] 561 and 23 L. R. A. [N. S.] 492.

The question of the validity of contracts of foreign corporations before getting permission to do business is treated in a note in 1 L. R. A. [N. S.] 1041. And upon the right to cancellation of contract made with foreign corporation because it has not complied with the laws entitling it to do business within the State, see note in 21 L. R. A. [N. S.] 707.

For the recovery back of money paid under a contract to a foreign corporation which has not complied with the conditions of doing business in the State see note in 38 L. R. A. [N. S.] 210.

As to statutory provision for penalty as affecting validity or enforceability of contract made by foreign corporation without complying with conditions of doing business, see note in 40 L. R. A. [N. S.] 857.

REPORTER.

From Multnomah: JOHN P. KAVANAUGH, Judge.

Statement by MR. JUSTICE BURNETT.

This is an action by Leo Hirschfeld against J. S. McCullagh to recover an amount alleged to be due on a promissory note. The complaint contains these allegations:

"(1) That heretofore on the 28th day of March, 1910, at Portland, Oregon, defendant herein, for value, made and executed to the Laemmle Film Service of Chicago, Illinois, a corporation, his promissory note in letters, words, and figures as follows, to-wit: '$9,000.00.   Portland, Oregon.   March 28, 1910.   For value received I promise to pay to the Laemmle Film Service of Chicago, Illinois, or order, nine thousand and no-100 dollars in 18 monthly installments of not less than $500.00 in any one payment; the first payment to be made on the first day of May, 1910, and a like payment to be made on the first day of each month thereafter until the whole sum has been paid; if any of said installments are not so paid, the whole of said principal to become immediately due and collectible and in case a suit or action is instituted to collect this note, or any part thereof, I promise to pay such additional sum as the court may think reasonable as attorney's fees in said suit or action. [Signed] J. S. MCullagh.   Due October 1, 1911, at Portland, Oregon.' And delivered same to said Laemmle Film Service of Chicago, Illinois, in Chicago, Illinois.   (2) That heretofore for value and in due course the Laemmle Film

Service, of Chicago, Illinois, a corporation, duly trans-
ferred and assigned all its rights, title and interest in and
to said promissory note to the plaintiff herein who is now
the owner and holder thereof."

It is further alleged, in substance, that the last pay-
ment of $500 was made September 14, 1910, and that the
defendant had been in default upon his payments since
October 1st of that year. After alleging that $700 was a
reasonable fee for attorney's services, the plaintiff
demands judgment for $6,500, with interest since
October 1, 1910, and for attorney's fees as stated, together
with costs and disbursements. The defendant filed a
plea in abatement, wherein it is alleged, in substance, that
the Laemmle Film Service, mentioned in the complaint,
is a corporation organized under the laws of the state
of Illinois, with its principal office and place of business
in Chicago, for the purpose of buying, selling, leasing,
and dealing in motion picture supplies and apparatus
and song slides; that for about two years it carried on
and conducted a business in the State of Oregon up to
and including March 28, 1910; and that during that
period it transacted a large volume of business of the
kind described in the articles of incorporation. It is
further averred in the plea that the corporation was
organized for the purpose of gain, and had never filed
with the Secretary of State in Oregon any declaration
of its intention or desire to engage in the transaction of
business within this State, and, further, in many particu-
lars set out and detailed in the plea, it is averred that the
corporation failed and neglected to comply with the law
of the State of Oregon; that the note was given in pay-
ment for certain goods, wares, and merchandise sold by
the corporation to the defendant within the State of
Oregon, and hence that the note was void and of no effect.
It is further alleged that the corporation transferred the
promissory note in suit to the plaintiff after it had become
due, and that the plaintiff is not the owner or holder

thereof for value nor in due course. The plaintiff answered this plea in abatement by denying all its allegations upon information and belief. Further answering the plea, the plaintiff alleged, in substance, that all the negotiations for the sale of the property to the defendant, McCullagh, and the execution of the promissory note in pursuance thereof were carried on in Chicago, in the State of Illinois, where the corporation had full authority to negotiate the sale of property and to contract in regard to the same and receive a promissory note in payment thereof, and that the defendant purchased the note in due course and for value. The new matter in this answer was traversed by the defendant's reply thereto. After a trial without a jury, the circuit court made findings of fact in substance as follows: That the Laemmle Film Service is a corporation organized and existing under the laws of the State of Illinois; that for some time, beginning in 1908 and up to about the 28th day of March, 1910, it carried on a business and conducted the same through an agent and office in the State of Oregon, during all of which time it did not comply with the laws of this State in regard to foreign corporations transacting business here; that it failed to appoint an attorney in fact to reside in the State or to pay the license fee or to file a certified copy of its articles of incorporation; that on March 28, 1910, it had ceased to do business in the State of Oregon, and that on that day the defendant made and executed the promissory note as in plaintiff's complaint set forth and forwarded the same, by mail, to the corporation in Illinois; that the note was given as part payment for the stock of merchandise, and good will which the said corporation had at that time at Portland, Oregon; that the contract for the sale of the same was made in Chicago, the delivery of the note was in Chicago; that all payments on the note were made in Chicago; that the contract for the sale of the property evidenced by the note was an Illinois con-

tract, and valid under the laws of the State of Illinois, and that, before the commencement of the action, the note was transferred and assigned to the plaintiff, and he is now the owner and holder thereof. Based on the findings of fact, the principal conclusion of law was that the plea in abatement should be dismissed. On July 31, 1911, the court entered an order and judgment that the plea in abatement be and the same is hereby dismissed. Thereafter, on the same day, the defendant announcing that he would stand upon the plea and not further plead, the court rendered judgment for the plaintiff and against defendant as for want of answer for $6,500, with interest at the rate of 6 per cent per annum from October 1, 1910, together with $500 attorney's fees, besides costs and disbursements taxed at $83.05. From this judgment defendant appeals.          Reversed.

For appellant there was a brief over the names of *Messrs. Cole & Cole,* with an oral argument by *Mr. Bartlett Cole.*

For respondent there was a brief over the names of *Messrs. Bernstein & Cohen,* with an oral argument by *Mr. Alexander Bernstein.*

Mr. Justice Burnett delivered the opinion of the court.

It appears from the records that the circuit court entered two orders in this case on July 31, 1911, one dismissing the plea in abatement, so called, and the other rendering final judgment against the defendant as for want of an answer for the sum of money demanded in the complaint.

1. The defendant gave notice of appeal from the final judgment. The plaintiff argues that, not having in terms appealed from the order dismissing the plea in abatement, the defendant is in no position here to have this court

determine the questions arising on the plea. Something was also said in the debate at the hearing about the matter contained in the plea being really in bar and not in abatement, so that for all purposes, although there were two orders as mentioned, there was in effect but one judgment, and that a final one upon the merits from which the appeal was properly taken. It is not necessary to decide whether the initial pleading of the defendant was in bar or in abatement. If it was in abatement, the decision of the circuit court dismissing it was an interlocutory order, the merits of which are properly reviewable on appeal from the final judgment. *La Grande* v. *Portland Public Market Co.,* 58 Or. 126 (113 Pac. 25). If in bar, its dismissal was properly part of the final judgment, the splitting of which into two journal entries does not affect the case.

As to the right of the plaintiff to sue on the note in question, he alleges "that heretofore for value and in due course" the corporation transferred and assigned the note to him, and he is now the owner and holder thereof. It may well be doubted if the quoted words here mentioned constitute anything else than a conclusion of law, or whether the pleader should not have set out the time and consideration of the transfer, so that the court might have the data from which to reach the conclusion desired by the plaintiff that the note came to him in due course so as to cut off defenses applicable to dishonored commercial paper. Be that is it may, however, the only testimony on that point is that of Carl Laemmle, the president of the corporation, who testifies that the note was indorsed to the plaintiff October 29, 1910. Bearing in mind that an installment of $500 was due on the note on the 1st day of that month, that, as alleged in the complaint, no payment has been made since September 14, 1910, that by its terms the whole principal of the note became immediately due on such a default in payment and that plaintiff so con-

strues it in his complaint, the conclusion is plain that the paper was dishonored to his knowledge when the plaintiff took it, and that as against him it is open to any defense which could have been urged against the corporation payee.

It is required substantially by Section 6726, L. O. L., that every foreign corporation transacting business within this State shall file the declaration, and pay the entrance fees provided by law, and execute and acknowledge an irrevocable power of attorney, constituting some person residing within this State attorney in fact for such corporation, authorized to accept service of all writs, processes, and summons, requisite or necessary to give complete jurisdiction of any such corporation to any of the courts of this State, in default of which the corporation shall not be entitled to transact any business within the State or maintain any suit or action or proceedings in its courts. Section 6727, L. O. L., provides, in substance, that every foreign corporation, formed for the purpose of gain, shall, before transacting business in this State, file with the Secretary of State a written declaration of its desire and purpose to engage in the same within the State. It is required that the declaration shall contain certain particulars not necessary to be mentioned, upon filing which declaration and paying to the Secretary of State the sum of $50 for filing and recording the same, together with the annual license fee due for the succeeding fraction of the fiscal year, the Secretary shall issue his certificate which is *prima facie* evidence of a legal existence of the corporation and of its right to do business in the State of Oregon. It is practically conceded, and the court so finds, that the corporation did none of these things required by law before engaging in business in this State. The court also found that, for about two years prior to March 28. 1910, the corporation carried on business and conducted the

same through an agent and office in the City of Portland, Multnomah County, State of Oregon. This finding 'is supported by testimony, to the effect that during this period the company maintained an office in the Marquam building in that city, and engaged in the business of renting and selling films, slides, and general moving picture traffic, and that the amount of the business for the first year was about $36,000, and for the second year about $37,000.

The plaintiff would avoid the effect of the defendant's plea in abatement by contending that the note sued upon is an Illinois contract, and that, being lawful there, it can be enforced here. The circuit court made findings of fact numbered 5, 6, and 7, which are here set out; the fifth and seventh being excepted to by the defendant, as follows: ·

"(5) That on said 28th day of March, 1910, the defendant herein made and executed a promissory note, as in plaintiff's complaint set forth, and forwarded same by mail to the Laemmle Film Service of Illinois to Chicago, Illinois. (6) That said promissory note was given as part of the payment price for the stock of merchandise and good will which the said Laemmle Film Service had at that time in Portland, Oregon. (7) That the contract for the sale of same was made in Chicago, Illinois, and the delivery of said note was in Chicago, Illinois, and that all payments on said note were made in Chicago, Illinois, and that contract for the sale of the property, evidenced by the promissory note in controversy, was an Illinois contract, and valid under the laws of the State of Illinois."

The only testimony as to making the contract is contained in the correspondence between the parties. Some previous communications by mail had passed between them, when on March 24, 1910, the president of the corporation addressed to the defendant at Portland, Oregon, a letter in which occurs the following language:

"Now I will make you one more proposition and if that is satisfactory to you I think we can get together. I will

sell you the Portland Branch for $12,000, you to pay $3,000 down and $500 a month until we are square, I to take a chattel mortgage on the entire office as it stands. * * I am going to New York the early part of next week, and, if agreeable, you can wire me whether this proposition is acceptable or not."

On March 28, 1910, in response to this letter from the president of the corporation, the defendant sent to him the following telegram, dated at Portland, Oregon:

"Carl Laemmle, President Laemmle Film service, 111 E. 14th Street, New York City. Personal. Bought your Portland business to day on terms of your last letter. Mailing to day to your Chicago Office, $3,000 also promissory note for $9,000. [Signed] J. S. McCullagh."

On the same day the defendant addressed a letter to the president of the corporation at Chicago, Illinois, saying:

"Your favor of the 24th inst. received yesterday. I slept on it all night. To day I wired you the following message: [Quoting message already set out above.] I consent to the $12,000 because there is no interest to be charged. In jumping up the price to $12,000 you get the top price and tip top value. * * Enclosed please find my check for $3,000 together with my promissory note for $9,000 payable in 18 monthly installments of $500 each. [Signed] J. S. McCullagh."

There are numerous authorities like *Commercial Bank* v. *Sherman,* 28 Or. 573 (43 Pac. 658: 52 Am. St. Rep. 811), which hold that doing a single act of trade in the State by a foreign corporation is not transacting business within the meaning of the statute, provided there is no intention shown to do anything further of the kind in the State. There are also many other authorities which hold that a foreign corporation may send its soliciting agents into a state to procure orders to the approval of the corporation at its home office for goods to be shipped from there into the state, all of which does not constitute the

transaction of business in the state as described in our laws because such traffic is protected by the interstate commerce clause of the Constitution of the United States. On the other hand, when, as in this case, a corporation formed under the laws of another state comes into the state, there open up an office or store in which it keeps its goods, sells them, or rents them like other concerns engaged in such traffic and continues the same for a period of years, it is unquestionably transacting business within the State.    The following authorities are illustrative of this matter:    *Elliott* v. *Parlin & Orendorff Co.,* 71 Kan. 665 (81 Pac. 500) ; *John Deere Plow Co.* v. *Wyland,* 69 Kan. 255 (76 Pac. 863: 2 Ann. Cas. 304) ; *U. S. Rubber Co.* v. *Butler & Co.* (*C. C.*), 132 Fed. 398; *Thomas Mfg. Co.* v. *Knapp,* 101 Minn. 432 (112 N. W. 989) ; *Wilson-Moline Buggy Co.* v. *Priebe,* 123 Mo. App. 521 (100 S. W. 558) ; *Neyens* v. *Worthington,* 150 Mich. 580 (114 N. W. 404: 18 L. R. A. [N. S.] 142) ; *International Text-Book Co.* v. *Lynch,* 81 Vt. 101 (69 Atl. 541) ; *Ulmer* v. *First National Bank,* 61 Fla. 460 (55 South. 405) ; *Diamond Glue Co.* v. *U. S. Glue Co.,* 187 U. S. 611 (23 Sup. Ct. 206: 47 L. Ed. 328) ; *Swing* v. *Marion Pulp Co.,* 47 Ind. App. 199 (93 N. E. 1004) ; *Swing* v. *Wellington,* 44 Ind. App. 455 (89 N. E. 514).

The principal question to be determined is whether or not the contract of which the note constituted a part was made in the State of Oregon or in the State of Illinois, or, in other words, whether the note in question was part of business transacted within the State of Oregon or not. The offer to sell the stock and good will, had no effect until it reached the defendant in Portland, Oregon, where it was addressed to him and where he and the goods were at the time.    On the other hand, when acceptance of the same was intrusted to the telegraph company or to the mails, this completed the contract, and it became binding from the moment it was so promulgated. *Williams* v. *Burdick,*

Sig. 17

63 Or. 41 (125 Pac. 844) ; *Price* v. *Atkinson,* 117 Mo. App. 52 (94 S. W. 816) ; *Busher* v. *N. Y. Life Ins. Co.,* 72 N. H. 551 (58 Atl. 41) ; *Swing* v. *Marion Pulp Co.,* 47 Ind. App. 199 (93 N. E. 1004) ; *Burton* v. *U. S.,* 202 U. S. 344 (26 Sup. Ct. 688: 50 L. Ed. 1057: 6 Ann. Cas. 362). In the latter case the defendant, a United States Senator, was indicted in the United States Court for the Eastern District of Missouri, charged with the crime of having agreed to receive and having received compensation for his services while such Senator, in representing a corporate suitor before the Post Office Department in a matter in which the government of the United States was interested. The testimony indicated that, while he was traveling in company with the suitor's counsel in Illinois, he proposed to act as attorney for the company in the matters named for a compensation of $500 per month for five months. He was informed by the counsel that his offer could not be accepted at the time, but that it must be referred to the home office of the corporation at St. Louis. On arriving at St. Louis, the counsel took up the Senator's offer with the suitor, and it immediately wired acceptance of the same to Washington where he received it. On the trial the point was made on behalf of the defendant Senator that, never having been in St. Louis, he could not have committed the crime there, as the agreement was not made there, but in Washington. The Supreme Court of the United States, however, in an opinion by Justice Harlan, overruled this contention, and held that, although he was never in St. Louis, his sending the offer to the company there and the acceptance sent from there by it constituted an agreement consummated in St. Louis; and that the crime was committed there, although the defendant Senator was never in that city.

In the light of the authorities noted above, it is our judgment that the incidents delineated in the testimony

culminating in the giving of this note constituted the transaction of business within the State of Oregon by the corporation named, and as such is within the inhabition of the statute of this state relating to foreign corporations. Although the acceptance of the offer of the corporation to sell and giving the note in part payment of the purchase price of the property were the last acts of a two years course of business transacted in the State, yet they are none the less obnoxious to the statute than the first or any other act of that course.

3. It is argued that, because it does not appear that the defendant gave a chattel mortgage to secure the indebtedness evidenced by the note as suggested in the offer, the transaction was not completed in Oregon by mailing the note with the letter of acceptance; but the corporation has negotiated the note after receiving payments on it, and we cannot now avoid the conclusion that the company accepted the paper as cloture of the sale.

4. In any event, the note was part of a business transaction in Oregon carried out in contravention of its laws, and contrary to the public policy of this State as expressed in its legislation upon this subject. On this account the courts here will not lend their aid towards enforcing the contract. *Commercial Nat. Bank of Ogden* v. *Davidson,* 18 Or. 57, 70 (22 Pac. 517) ; *Bartlett* v. *Collins,* 109 Wis. 477 (85 N. W. 703 : 83 Am. St. Rep.. 928) ; *Emery* v. *Burbank,* 163 Mass. 326 (39 N. E. 1026 : 28 L. R. A. 57 : 47 Am. St. Rep. 456) ; *Union Locomotive Co.* v. *Erie Ry. Co.,* 37 N. J. Law, 23; *Clark* v. *Tanner,* 100 Ky. 275 (38 S. W. 11) ; *Rogers* v. *Rains,* 100 Ky. 295 (38 S. W. 484) ; *Hallman* v. *Telleren,* 55 Neb. 255 (75 N. W. 560) ; *Varnum* v. *Camp,* 13 N. J. Law, 326 (25 Am. Dec. 476) ; *Thurston* v. *Rosenfield,* 42 Mo. 474 (97 Am. Dec. 351) ; *Stricker* v. *Tinkham,* 35 Ga. 176 (89 Am. Dec. 280) ; *Minzesheimer* v. *Doolittle,* 60 N. J. Eq. 394 (45

Atl. 611) ; *Rose* v. *Kimberly Co.,* 89 Wis. 545 (62 N. W. 526 : 27 L. R. A. 556 : 46 Am. St. Rep. 855).

5. The law of the forum governs the remedy which will not be applied by the courts, if the contract, although valid elsewhere, is contrary to the public policy of this State as declared by its laws. The circuit court erred in finding either as a fact or as a conclusion of law that the note in question was a Chicago or Illinois contract, or that it was an obligation enforceable against the defendant in the courts of Oregon under the circumstances disclosed by the pleadings and testimony.

The judgment of the circuit court is reversed, with directions to sustain the plea in abatement, and dismiss the action.                                REVERSED.

Decided April 1, 1913.

ON REHEARING.

(130 Pac. 1131.)

Opinion by MR. CHIEF JUSTICE MCBRIDE.

1. The petition for rehearing challenges the constitutionality of Section 6707, L. O. L., being Section 5, p. 43, Session Laws of 1903, on the ground that it imposes a tax upon the whole capital stock of a foreign corporation, irrespective of whether it is employed in this State. That the imposition of such tax is unconstitutional is clearly held in the following cases: *W. U. Telegraph Co.* v. *Kansas,* 216 U. S. 1 (30 Sup. Ct. 190: 54 L. Ed. 355) ; *Pullman Co.* v. *Kansas,* 216 U. S. 56 (30 Sup. Ct. 232: 54 L. Ed. 378) ; *Ludwig* v. *W. U. T. Co.,* 216 U. S. 146 (30 Sup. Ct. 280: 54 L. Ed. 423) ; *Atchison, Topeka & Santa Fee R. Co.* v. *O'Connor,* 223 U. S. 280 (32 Sup. Ct. 216: 56 L. Ed. 436) ; *Mulford Co.* v. *Curry,* 163 Cal. 276 (125 Pac. 236).

2. Whatever might be our own opinion, the contention presents a federal question in regard to which the holding of the Supreme Court is controlling; and we therefore acquiesce in the conclusion reached in the cases above cited, and hold that, in so far as the section in question requires the payment of a license fee based upon the whole amount of the capital stock of a foreign corporation, whether employed within the State or not, it is void. But it does not follow that because this part of the section is void that the whole section is void. Its provisions are not so interdependent that other requirements cannot be separated from the single invalid provision. A corporation is required to file with the Secretary of State a statement, showing, among other things, the location of the principal office, the names and post office addresses of its president, secretary, treasurer, managing agent, and attorney in fact in this State; and a failure or refusal to file such report or to pay the license fee subjects it to a fine of $100. It will be noticed that this penalty may be incurred (1) by failure to file the report; or (2) by failure to pay the license fee. If the corporation pays the license fee, but fails to make a report complying with the provisions of the section, it is amenable to the prescribed penalty; or, if it makes the report, but fails to pay the fee, it is also held liable. The fact that the requirement to pay the license fee is void because of a conflict with the Federal Constitution does not render void other requirements not so in conflict.

3. No penalty is expressly denounced by the succeeding sections for failure to appoint a resident attorney; and, following the rule announced in *Bank of British Columbia* v. *Page,* 6 Or. 431, we would be compelled to hold that a contract made by a corporation before appointing an attorney in fact is absolutely void. But the law abhors forfeitures, and we are disposed to construe Section 6707, L. O. L., and Section 6726, L. O. L., together. The section last cited requires the appointment of such attorney, and

the preceding section requires a report to the Secretary of State, giving the name of such attorney. Taking the act by its four corners and construing the sections together, we think it may reasonably be deduced that the corporation must appoint the attorney, and report that fact to the Secretary of State in its annual statement. If it has neglected to appoint the attorney, it cannot, of course, make the report required by law, and is liable to a penalty for its failure so to do. The law having prescribed the penalty by way of fine, the courts should not impose an additional penalty by way of forfeiture; the omission not being *malum in se.*

4, 5. The entrance fee of $50 required by the statute is not in conflict with any provision of the Federal Constitution, and is a reasonable requirement. The corporation has not paid nor offered to pay this fee, and its right to maintain an action in the courts of this State is suspended until such fee is paid. Section 6708, L. O. L. And this objection must be raised by plea in abatement. Section 6709, L. O. L.

6. The assignment of the note after maturity and especially an assignment made as in this case merely for the purposes of collection cannot confer on the assignee any better right than that of the payee at the time of the assignment. Plaintiff took the paper subject to all defenses which existed as against the original payee. The petition for rehearing seems to assume that we have held that the contract between plaintiff's assignor and defendant is absolutely void, and the note also void; but such was not our holding. Plaintiff can enforce payment in our courts whenever his assignor or principal complies with our laws and pays the $50 entrance fee which the statute requires.

The suit should abate without prejudice to another action upon plaintiff's assignor complying with the statute in so far as held valid herein.

FORMER OPINION APPROVED.