[No. 20168. Department Two. March 10, 1927.]

CLARENCE C. CHAMBERS, *Appellant*, v. LINDSEY E. KIRKPATRICK *et al.*, *Respondents*.[1]

[1] FRAUDS, STATUTE OF (20)—REAL PROPERTY—CONTRACTS FOR A BROKER'S COMMISSIONS. Rem. Comp. Stat., § 5825, providing that a contract authorizing or employing an agent or broker to sell or purchase real estate for compensation or a commission is void unless in writing, signed by the party to be charged, applies to case where a real estate broker, upon inquiry for timber, told the prospective investor that he had certain timber under option, showed it to him, helped him with a survey and gave him the name of the owner, under an oral agreement that the investor, if he bought it, would pay him one dollar a thousand and twenty-five cents for the cedar poles; and the broker cannot claim it was a valid agreement merely for services performed.

[2] SAME (54, 56)—WAIVER—PLEADING STATUTE AS DEFENSE. Rem. Comp. Stat., § 5825, providing that a contract authorizing or employing an agent or broker to sell or purchase real estate for compensation or a commission is void unless in writing, signed by the party to be charged, is not waived by failing to urge the statute as a defense until after evidence was received without objection, showing the oral agreement.

MACKINTOSH, C. J., and MITCHELL, J., dissent.

Appeal from a judgment of the superior court for Spokane county, Witt, J., entered March 31, 1926, upon

[1] Reported in 254 Pac. 1074.

findings in favor of the defendants, in an action on contract, tried to the court. Affirmed.

*O. C. Moore,* for appellant.

*John Pattison* and *Munter & Munter,* for respondents.

BRIDGES, J.—The purpose of this suit is to obtain compensation for assisting the defendant in purchasing certain timber lands. The plaintiff testified that he lived in Spokane, that he is engaged in the lumber and timber business, and for some years has been well acquainted with much of the timber located in northern Idaho; that on a certain day he met the defendant in Spokane, and that the latter told him that

" . . . he was looking for a piece of timber, and he asked me if I had anything that might suit him. I told him I did not know whether it would suit him or not, but I knew where there was some timber, and he said that if I had anything that I would show him, that he would be glad to go with me and look at it; and I told him I had some timber over here in Idaho, and I told him I had no option on it, and he says, 'You don't need any option if you do business with me,' and I says, 'I usually have an option.' 'Well,' he said, 'I will tell you, if you will take and show me that timber and it suits me and I buy it, I will pay you for it.' He says, 'What do you want?' I told him I wanted a dollar a thousand and twenty-five cents a cedar pole for all merchantable poles. . . . He says, 'That don't say, Chambers, if you take me over there now that I am going to take it, but if I do take it, I will pay you a dollar a thousand and twenty-five cents a cedar pole.' "

He further testified that, shortly after this conversation, he took the defendant to certain lands in northern Idaho, showed him the quarter post, helped to survey the tract, and did something toward assisting the defendant in making a cruise of the timber, and that he told him who the owner was and where he lived. Later

the defendant, according to the testimony, without further consulting the plaintiff, saw the owner of the land and purchased it. Upon the close of plaintiff's testimony, the defendant's motion for a nonsuit was granted, and plaintiff has appealed from a judgment dismissing the action.

[1] The statute of frauds is involved. Rem. Comp. Stat., § 5825 [P. C. § 7745] says:

"In the following cases specified in this section, any agreement, contract and promise shall be void, unless such agreement, contract or promise, or some note or memorandum thereof, be in writing, and signed by the party to be charged therewith, or by some person thereunto by him lawfully authorized, that is to say: . . . (5) an agreement authorizing or employing an agent or broker to sell or purchase real estate for compensation or a commission."

Appellant takes the position that this statute is not applicable to the facts of this case because the services rendered by him

" . . . were not rendered as an agent or broker in selling or purchasing real estate or standing timber, but for disclosing to defendant . . . the location of timber of the character sought by him, and for physical services in conducting defendant to said lands and pointing out the timber thereon and in assisting in cruising and surveying the same."

No case like this has been cited in the briefs, nor have we found one. Similar statutes in some of the states have reference only to services by brokers in selling lands, and not in the purchase of them. And, generally speaking, in those states where the statute is like ours, the cases have been concerning services alleged to have been performed in selling lands, and not in purchasing them.

Before the passage of that portion of the statute which we have quoted, there was much complaint over

the claim of real estate agents for compensation for alleged services in making sales of real estate. It was to cure this evil that this statute was enacted. The general idea of the legislature must have been that, before any real estate agent or broker could recover for his services in selling or purchasing lands, his contract must be in writing. The statute says that all contracts employing an agent "to sell or purchase" real estate for compensation are void unless in writing. Technically speaking, such an agent neither sells nor purchases. He, on the one hand, acts as a middleman in finding a purchaser for one who desires to sell, and, on the other hand, performs services for a prospective purchaser in finding the owner of property suitable to the purchaser and who is willing to sell. Whatever the agent does, it is nothing but the performance of services for his client. If the broker is an agent for the owner, his business is to find a purchaser. If he is the agent of one who desires to purchase, he obtains what the purchaser desires and brings the owner and the intending purchaser together. All of the authorities hold that, whatever an agent does for the seller comes within the statute, and, such being the case, we cannot see any reason why similar services performed for an intending purchaser must not also come within its provisions. The appellant says that he "simply sold his information to the defendant along with his services." This is exactly what the agent of one desiring to sell does. Some man goes to a real estate agent's office in the city of Olympia, tells him that he is desirous of buying a lot in a designated portion of the city and is willing to pay a designated price therefor, and requests the agent to find such property for him, and the agent does find such lot and it is purchased; it seems to us that there ought to be no question but what such serv-

ices would clearly come within the terms of the statute. And yet there is but little difference in the actual facts of the supposed case and those involved in this suit.

Appellant cites *Jones v. Kehoe,* 61 Wash. 422, 112 Pac. 497; *Orr v. Perky Investment Co.,* 65 Wash. 281, 118 Pac. 19; and *Leigh v. Yancey,* 67 Wash. 18, 120 Pac. 512. We do not think these cases are in point. The first one was where one broker sued another on an oral contract to divide certain commissions, and the court held that the statute did not apply "between two brokers or real estate men." The *Orr* and *Leigh* cases are exactly like the *Jones* case and lay down the same rule. Nor do we think the other cases cited by appellant are any more in point.

Whether the contract comes under the statute, depends on whether the person performing the services is a broker or merely an employee or servant. If the former, the statute applies; if the latter, it does not. If respondent had known of the land and had merely employed appellant to help him locate its corners and cruise the timber, the latter would not have been a broker. But the facts are different—appellant alone knew of the lands and their owner. These facts made him a broker. What he did in finding the correct corners, and in assisting in cruising the timber, was done in pursuance of his services as a broker, for which he was not to receive any compensation unless respondent purchased. A broker is one who acts as a middleman between other parties. 4 R. C. L. 242. Here appellant was acting as a middleman between one who wished to purchase and one who was willing to sell. His duties were to bring the two men together.

A case in point is *Griffiths v. Von Herberg,* 99 Wash. 235, 169 Pac. 587. There respondents employed appellant "to obtain a suitable structure for their moving

picture business and secure a lease of the premises''
for a stated period and rental, for which services he
was to be paid. We held that appellant was a broker.

If appellant here does not come under the statute,
then it is difficult to understand what the legislature
had in mind in providing that a contract ''to purchase''
real estate for compensation must be in writing, or
what services could be performed by a broker looking
toward the purchase of property which would fall with-
in the statute.

[2] Appellant further contends that, if the statute
applies, the respondent had the right to waive it and
by his conduct at the trial did waive it. He bases this
argument upon the fact that the question of the statute
of frauds was not raised by respondent until all the
testimony was received showing the oral agreement,
and that he made no objection to the receipt of such
testimony. It is possible that the rule contended for
by appellant might apply under statutes which pro-
vide that contracts such as that involved here shall not
be enforceable unless in writing; but our statute is
broader than most others and says that any such agree-
ment ''shall be void'' unless in writing. In the case
of *Hendry v. Bird,* 135 Wash. 174, 237 Pac. 317, 240
Pac. 565, in discussing this same statute, we held that
a contract which comes within its purview is a nullity
and unenforceable, saying:

''We cannot conceive of such a thing as a contract
that is void under the statute, and yet can be the founda-
tion of a legal obligation arising out of nothing else.''

This being the situation, the respondent had a right
to raise the statute of frauds at any time during the
trial.

The judgment is affirmed.

TOLMAN and ASKREN, JJ., concur.

MACKINTOSH, C. J., and MITCHELL, J., dissent.