Argued January 31; reversed September 24, 1929; argued on rehearing January 10; former opinion adhered to February 25; motion to modify opinion allowed March 25; rehearing denied March 25, 1930

McGIRL v. BREWER et ux.

(280 P. 508, 285 P. 208)

424

*Porter J. Neff* of Medford for appellant.
*Charles W. Reames* of Medford for respondents.

BROWN, J. ■ The Montana statute provides that, in a suit to foreclose a mortgage, it is lawful to obtain a personal judgment for any deficiency remaining after foreclosure. This is true of mortgages given for the purchase price, and mortgages of any other character as well. Revised Code of Montana, 1921, § 9467.

The Oregon code relating to mortgage foreclosure provides:

"When judgment or decree is given for the foreclosure of any mortgage, hereafter executed, to secure payment of the balance of the purchase price of real property, such judgment or decree shall provide for the sale of the real property covered by such mortgage, for the satisfaction of the judgment or decree given therein, and the mortgagee shall not be entitled to a deficiency judgment on account of such mortgage or note or obligation secured by the same. (Or.L., § 426.)"

The plaintiff rests his case upon the doctrine of comity between courts. The defendants, however, invoke the protection of the foregoing section of our statute, and contend that an action on a purchase-money note to collect a deficiency existing after foreclosure of the purchase-money mortgage on real estate securing the same is contrary to the public policy of Oregon as declared by its statutes and the decisions of its courts.

In the comparatively recent case of *Wright v. Wimberly,* 94 Or. 1, 17 (184 P. 740), this court said:

"It is a fact of which courts in Oregon should take judicial notice, that in the year 1897 and for some time thereafter, great financial depression prevailed in the Pacific Coast states. Persons who had purchased real property in that territory during the earlier flush times by paying a part of the purchase price and giving a mortgage to secure the remainder, found it impossible, if they had not disposed of the premises prior to the monetary stagnation, to discharge their legal obligations, whereupon the foreclosure of liens became inevitable. As there was no money then easily to be secured, the creditor, upon a sale of the premises pursuant to the decree, usually became the purchaser for almost a nominal sum and far below the mortgage debt, thereby obtaining a recovery over upon the personal obligation of the mortgagor for the remainder, thus taking all the property the debtor then had and jeopardizing his prospects of ever obtaining any more land. In order to prevent a repetition of such conduct on the part of a creditor, § 426, L. O. L., was enacted and made applicable to the foreclosure of mortgages thereafter executed. That such a statute was intended to be remedial can not well be disputed. The enactment is in the nature of an appraisement law, fixing an upset price upon the sale of real property under a decree of foreclosure equal to the amount of the debt, costs,

disbursements, etc., thereby permitting the mortgagee to retain the sum of money which he had received on account of the sale, and allowing him to be restored to his original estate in the premises.''

In commenting further upon this section of the statute, Mr. Justice BENNETT, speaking for the court, said:

''Under the doctrine of *Page v. Ford,* 65 Or. 450 (131 P. 1013, Ann. Cas. 1915A, 1048, 45 L. R. A. (N. S.) 247), the creditor still has his option to proceed on the mortgage to foreclose, or to proceed on the promissory note at law; but the legislature had a perfect right to say that he could not do both.

''As to future contracts and in pursuance of what it considers a correct public policy the legislature has a right to prohibit any contracts which may be injurious to the general public good, or it may stop with rendering such contracts unenforceable. This has been too often held to be any longer questioned. The usury law prevents the contract of the parties for a greater than a given rate of interest. Again it is generally held that a party can not make a contract in advance to waive his right of redemption or his privilege of exemption. Hundreds of other illustrations could be cited but these are enough.

''I think the statute should be liberally construed in the interest of the purpose intended by the legislature. It is true that arguments can be adduced pro and con, as to whether or not such a law would be in the interest of a good public policy, but the very fact that there are such arguments both ways, and considerations to be weighed on each side, makes the question preeminently one for the legislature. And it having declared what it believes to be public policy, in regard to the matter, we must accept that as good public policy and liberally construe the law for the purpose of carrying out its intention.''

As early as 1889 the question of public policy was passed upon by our court in the case of *Bank of Ogden v. Davidson,* 18 Or. 57 (22 P. 517), where it was held:

"A provision in a note made out of this State, secured by chattel mortgage on property within the State, contained a provision that 'if not paid at maturity, ten per cent. additional as costs of collection' should be added, and which provision was valid and binding in the State where the note was made. *Held,* that in a suit to foreclose the mortgage in Oregon, the law of that State governs the application of the remedy and such provision being contrary to the public policy in the State, will not be enforced. (Point 7, Syl.)"

In the body of the opinion the court said:

"In *Balfour v. Davis,* 14 Or. 47 (12 P. 89), it was held that a provision in a mortgage of 20 per cent. for counsel fees on the amount due, in case of a suit, whether judgment should be recovered or not, was in violation of the rule of just compensation, and contrary to the well-settled principles of public policy."

The case of *Bank of Ogden v. Davidson,* supra, involved a note that was lawfully executed in Utah, while the note involved in *Balfour v. Davis* was executed in California.

The case of *Bond v. Turner,* 33 Or. 551 (54 P. 158, 44 L. R. A. 430), is analogous. There the court approved the declaration of Mr. Justice WILLIAMS in *Haskill v. Andros,* 4 Vt. 609 (24 Am. Dec. 645), to this effect:

"Whatever remedy our laws give to enforce the performance of a contract will equally avail the citizen or the foreigner, and they equally must be subject to any restraints which the law imposes upon them."

In *Jamieson v. Potts,* 55 Or. 292 (105 P. 93, 25 L. R. A. (N. S.) 24), our court reannounced this familiar principle of law in the following language:

"The lex loci contractus must govern as to the validity, interpretation, and construction of the con-

tract; but the remedy to enforce it, or to recover damages for its breach, must be pursued according to the law of the forum.''

In the case of *Hirschfeld v. McCullagh,* 64 Or. 502 (127 P. 541, 130 P. 1131), the question was again presented and the pronouncement made that, where a contract, although legal elsewhere, is contrary to the public policy of Oregon as declared by the laws of this state, the court of this jurisdiction will not enforce the contract since the law of the forum governs as to the remedy. See list of authorities in paragraph four of the opinion.

Concerning contracts against policy of the forum, the editors of Ruling Case Law have set down the following:

''The public policy of a state, established either by express legislative enactment, or by the decisions of its courts, is supreme, and when once established will not, as a rule, be relaxed even on the ground of comity to enforce contracts, which, though valid where made, contravene such policy. (5 R. C. L., p. 944.)''

Again, we carve from 8 C. J., p. 86, § 141:

''All judicial recognition of foreign law is subject to the well-established principle that no court will enforce the provisions of foreign law which are repugnant to the public policy of its own forum. A bill or note executed or made payable in another state or country will not be enforced in the forum where it is contrary * * * or * * * violates the positive legislation of the state of the forum, that is, where it is contrary to its Constitution or statutes. The same rules apply to bills and notes as to other contracts.''

The case of *Farley v. Fair,* 144 Wash. 101 (256 P. 1031), was an action at law brought in the courts of Washington, to collect a commission for the sale of real estate in Oregon; and, in disposing of the case, the Washington court said:

"But it is argued the agent lived and did business in Oregon; the commission contract was signed and delivered to him in Oregon; * * * the negotiations took place in Oregon; and that the Oregon law, which is pleaded, should be applied. Still, even though we concede, for the sake of argument, that, so far as other reasons are concerned, the laws of Oregon would govern, yet our statute of frauds declares a public policy (*Chambers v. Kirkpatrick,* 142 Wash. 630 (253 P. 1074), and we may not subordinate that which has been made a public policy of this state to the laws of some other jurisdiction (citing authorities)."

The case of *Carstens Packing Co. v. S. Pac. Co.,* 58 Wash. 239 (108 P. 613, 27 L. R. A. (N. S.) 975), involved an action that was instituted in the courts of Washington for loss and damage to cattle shipped from California to Tacoma, Washington. The action was predicated upon the negligence of the Southern Pacific company in failing to provide safe unloading facilities at Gazelle, California. The defendant, in answer, set forth the contract between the parties, which recited that in no event should the shipper be liable for any loss not proved to have been caused by its gross negligence, and pleaded that this exemption from liability was provided by the laws of California, where the contract was made. In its treatment of the case the supreme court of Washington, discussing the doctrine of comity between courts, and the public policy established in Washington, said:

"Of course, the general rule is that the law of the place of the making of a contract controls in determining the rights and liabilities of the parties thereto. This rule, it is contended by learned counsel for respondent, has its exceptions and qualifications, and does not control in this case, because the limitations attempted to be placed upon appellant's liability resulting from its negligence other than its gross negligence is in contravention of the public policy of this state, and therefore, when sought to be enforced in

the courts of this state, should be regarded as void, and that appellant's liability for its negligence should be determined regardless of such provision. At the time of the making of the contracts it was a part of the statute laws of this state, Laws of 1907, p. 691. 'That no contract, receipt, rule or regulation shall exempt any corporation engaged in transporting livestock by railway, from liability of a common carrier, or carrier of livestock, which would exist had no contract, receipt, rule or regulation been made or entered into.' It hardly needs argument to demonstrate that this is a declaration of public policy. Clearly its enactment was prompted by a concern for the public welfare.''

To similar effect is *Barbour v. Campbell,* 101 Kan. 616 (168 P. 879). See, also, notes, 55 Am. St. Rep. 775, 61 L. R. A. 433.

Each party to this controversy has cited valuable authority in support of his particular view as to what is, and what is not, the public policy of this state as applicable to the cause at issue. But this controversy is not involved in confusion or uncertainty. The law of the case is aptly stated in 41 C. J., at § 646b, where the editor, in discussing the effect of statutory provisions such as the provision involved in the case at bar, has written:

''Statutes of this nature do not apply where the mortgaged premises are situate in another state, but, if in force in the state where the mortgaged land lies, may be pleaded in defense to an action on the note or bond in another state, although there is authority for the view that such statutes are mere limitations on the remedy in the states in which they are in force and consequently that they are no bar in an action on the debt in another state, or in a federal court having jurisdiction of the parties.''

It follows that the decree appealed from must be reversed. It is so ordered.

BEAN, BELT and McBRIDE, JJ., concur.

Former opinion adhered to on rehearing February 25, 1930

## ON REHEARING
(285 P. 208)

HAMILTON, A. A. J. In order that we may the more clearly understand the objection which defendants are making to the maintenance of plaintiff's action, it is proper that we should call attention to section 426, Oregon Laws, which reads as follows:

"When judgment or decree is given for the foreclosure of any mortgage, hereafter executed, to secure payment of the balance of the purchase price of real property, such judgment or decree shall provide for the sale of the real property, covered by such mortgage, for the satisfaction of the judgment or decree given therein, and the mortgagee shall not be entitled to a deficiency judgment on account of such mortgage or note or obligation secured by the same."

It will readily be admitted that, had plaintiff's mortgage been given as security for the payment of a note executed in Oregon, and upon real property situate in Oregon, and had foreclosure proceedings taken place in said state foreclosing the same, leaving an amount yet due, no further action could be maintained for the recovery of any deficiency remaining unpaid. Our court in construing the statute to which attention has just been called has so held: *Wright v. Wimberly,* 94 Or. 1 (184 P. 740). In that cause it is stated that:

"Although section 426, L. O. L., abolishing deficiency judgments upon foreclosure of real estate

purchase-price mortgages, does not so modify section 429, relating to action at law on indebtedness secured by mortgage, as to prevent the holder of purchase-money mortgage note from disregarding the mortgage and bringing action for personal judgment on the note; yet, where such holder does sue to foreclose, then, since the court is inhibited by section 426 from awarding under section 425 a conditional recovery or 'deficiency judgment' against the mortgagor, its determination of the entire sum due upon the personal obligation, as required by section 422, is not equivalent to decreeing recovery thereof, except only as the award is limited to the mortgaged realty; and, as the foreclosure sale necessarily exhausts the power given to the court, the effect as *res judicata* of the decree thus denying deficiency judgment is to prohibit a later separate action at law by the mortgagee for such a deficiency": Point 6, Syl.

■ The confusion here arising is occasioned by the fact that the transaction, that is, the giving of the note and the mortgage to secure the same, and the contract in reference thereto, originated in the state of Montana, and the lands mortgaged are situate in the state of Montana. It is, however, the contention of defendants that the said law of Oregon relative to the foreclosure of a mortgage given to secure the purchase price governs in this case. It is argued that, this action being brought in the forum of the Oregon courts, the law of the forum is to be applied, and that, notwithstanding the fact that the transaction took place in the state of Montana and that the lands mortgaged are situate in that state, nevertheless the prohibition regarding a deficiency judgment in such cases is to be enforced as a part of the remedy afforded by the *lex fori,* as distinguished from the *lex loci contractus.* This is a branch of the law about which there is much contrariety of opinion. In the instant cause the court in which the

action is brought is the *lex fori,* or the jurisdiction in which the relief is sought, and it is elementary law that this jurisdiction controls as to all matters pertaining to remedial, as distinguished from substantive, rights, and the only uncertainty which may arise concerning this rule must result from conflicting views as to what matters fall within one or the other of such classes of rights: 12 C. J., p. 483, § 92. It is maintained that, notwithstanding the rights of plaintiff accrued under a contract executed in a foreign state, yet, inasmuch as the matters presented to the Oregon court affect only the remedy, the law of Oregon relative to this particular question should be controlling. The proposition of law may be stated in another way to the following effect:

"While the substantive rights of the parties are governed by the *lex loci,* it is well settled that the *lex fori,* or the law of the forum, governs as to the form of remedy and all matters of procedure relating thereto": 1 C. J., 984, § 92.

Concerning the *lex loci contractus,* the editors of this work thus state the law:

"The act of the parties in entering into a contract at a particular place, in the absence of anything shown to the contrary, sufficiently indicates their intention to contract with reference to the laws of that place; hence the rule, as it is usually stated, that a contract as to its validity and interpretation is governed by the law of the place where it is made—the *lex loci contractus*—or, more accurately, that contracts are to be governed as to their nature, validity and interpretation by the law of the place where they were made, unless the contracting parties clearly appear to have had some other place in view": 13 C. J., p. 248, § 19, and cases cited.

This is a statement of the cardinal principles of the law as to the *lex loci contractus* and the *lex fori*

about which there is no dispute, but from the different interpretations given by the courts on the subject there has grown some confusion as to their application.

The respondents seek to have the foreclosure proceedings had in the court of the state of Montana given the same effect as follows a mortgage decree and sale in this state by virtue of said section 426, Or. L. We have seen that the interpretation placed upon this statute in *Wright v. Wimberly,* supra, precludes a recovery of the amount remaining unpaid. The statute of Montana provides but one action for the recovery of debt or the enforcement of any right secured by mortgage upon real or personal property. In such action the court may, as it did in the said foreclosure proceeding, direct a sale of the encumbered property and the application of the proceeds thereof, and the payment of the costs of the court and sale, and the amount due plaintiff; and if it appear from the sheriff's return that the proceeds are insufficient and a balance remains due, a judgment can then be docketed for such balance against the defendant personally liable for the debt, and the holder of the note secured by the mortgage foreclosed can maintain an action against the makers thereof for the unpaid balance of the note after foreclosure.

The law of Montana upon this subject is, in substance, as it is quite generally enacted in this country. In 42 C. J., at § 1991, "Mortgages," we find a general statement of this law, which reads as follows:

"Where the proceeds of a foreclosure sale are not sufficient to satisfy the mortgage debt, and plaintiff did not recover a deficiency judgment in the foreclosure suit, or was prevented from doing so by want of authority in the court to grant it, want of jurisdiction over defendant, or other cause, he may thereafter maintain an action against the person liable for such

deficiency, basing his action on the note or bond secured by the mortgage, or on the foreclosure judgment, or simply on the indebtedness arising from the foreclosure and the failure to extinguish the original debt or claim.''

See, also, cases cited in notes.

It is obvious that the defendants must prevail, if at all, by giving to the said Oregon statute an extraterritorial effect in applying it in the present action. By this defense it is said to plaintiff, in substance, you may not prosecute this action in our courts, for the reason that we have a law which directs that when judgment or decree is entered for the foreclosure of a mortgage given for the purchase price of real property, such decree shall provide for the sale of said property mortgaged for the satisfaction of the judgment or decree, and the mortgagee shall not be entitled to a deficiency judgment. It is not deemed by defendants a sufficient reply for plaintiff to state, as he does here, that he has no decree in Oregon nor could he very well have one for the reason that the real property mortgaged lies in another state and the contract in relation thereto was likewise made there. It is plain, however, that said law so relied upon has reference only to the maintenance of suits prosecuted in said forum, and to such judgments and decrees as may be made affecting real property therein.

Of analogous provisions of the law existing in the different states, it is said:

''In several states it is provided by statute that only one action shall be maintained for the recovery of any debt secured by mortgage, and that it shall be by foreclosure, or else that the remedy by foreclosure shall be exhausted before an action is brought on the bond, or that while an action of foreclosure is pending an action on the debt cannot be maintained without

leave of court, or merely that the two remedies shall not be pursued simultaneously in the same county. Statutes of this nature do not apply where the mortgaged premises are situated in another state, but if in force in the state where the mortgaged land lies, may be pleaded in defense to an action on the note or bond in another state'': 41 C. J., p. 656, § 646b.

To the same effect, see *London & San Francisco Bank, Ltd. v. Dexter Horton & Co.,* 126 Fed. 593; *Mantle v. Dabney,* 47 Wash. 394 (92 P. 134); *Felton v. West,* 102 Cal. 266 (36 P. 676); *McGue v. Rommel,* 148 Cal. 539 (83 P. 1000); *Denver Stockyards Bank v. Martin,* 177 Cal. 223 (170 P. 428), and *Colton v. Salomon,* 67 N. J. L. 73 (50 Atl. 588).

In *Felton v. West,* supra, the respondent owned a mortgage upon lands situate in Oregon. Suit was commenced to foreclose. Personal service of summons could not be obtained, and service by publication was made. Only a part of the mortgage debt was realized. Respondent commenced an action in California to recover the deficiency, and the appellant, in defending, relied upon a California statute which reads as follows:

"There can be but one action for the recovery of any debt, or the enforcement of any right secured by mortgage upon real or personal property, which action must be in accordance with the provisions of this chapter. In such action the court may, by its judgment, direct a sale of the encumbered property (or so much thereof as may be necessary)'': Code of Civil Procedure, § 726.

Said statute provides for the application of the proceeds of sale, etc. The court, in regard to the objections made to the California court's entertaining jurisdiction, says:

"The circumstances of this case take it completely without the purview of the section. This section only

refers to actions for the recovery of a debt secured by a mortgage upon property situated in the state of California. The context clearly evidences that fact. All the provisions of the section entirely negative the idea of any other construction. We cannot assume that the authors of this legislation attempted to establish a procedure for the foreclosure of mortgages upon realty situated in other states. The action referred to in this section is an action of foreclosure upon real or personal property which of necessity would have to be situated in the state of California, for an action of foreclosure could be brought in no other place."

In *Colton v. Salomon,* supra, being an action prosecuted in New Jersey on a written assumption by the defendants of a bond for $7,500 held by plaintiff secured by mortgage on land in New York, the defendants made the objection that the plaintiff had not foreclosed said mortgage in accord with the requirements of the statute of New Jersey. The court says, in regard thereto:

"The * * * objection * * * is * * * without foundation. It is deduced from the statute that requires proceedings for the collection of a debt secured by bond and mortgage to be first by foreclosure of the mortgage and sale of the mortgaged premises, and, only after that, by suit on the bond for deficiency. Gen. Stat., pp. 2111, 2112. It may be that this statute applies to an assumption of such a bond, but it is quite clear that it does not apply where the mortgage is on property outside of this state, for it assumes to regulate foreclosures and sales, and this would be impossible extra-territorially."

It appears that the effect of the mortgage contract entered into between the appellant and respondents in the instant cause was properly determined in the court of Montana, the state where the transaction took place and where the mortgaged land is situate, and that the

legal proceeding of foreclosure of said mortgage was there properly taken. It further appears from the facts and law applicable thereto that appellant is entitled to maintain an action at law against respondents in the court of Oregon for the balance remaining unpaid upon said claim, unless, as maintained by respondents, said section 426, Or. L., and the adjudications of the courts of Oregon, in interpretation thereof, have declared a public policy of said state which would prevent its courts from enforcing said demand.

The respondents assert that to permit the enforcement of the claim of appellant in the courts of Oregon is obnoxious to the laws of comity which exist between nations and between sister states permitting actions at law arising in such foreign jurisdictions to be maintained in the local courts and tribunals, and recognizing and applying in proper cases the laws of the foreign state. As we have elsewhere herein noted, the laws of a foreign jurisdiction are received and applied when governing the contract or transaction as being the *lex loci contractus*. It is a maxim of the law "that a contract good where made is good everywhere." Whilst our court in such cases will apply the law of the sister state when applicable, yet the remedy is governed by the law of the forum which relates more directly to the procedure in the local court. For instance, the rules governing the trial, the settlement of the pleadings, questions as to the admissibility of evidence, and many like subjects, are of the *lex fori*: 13 C. J. 260, note 27.

It is quite impossible to consider a contract apart from the remedy given by the law of its enforcement, because it is this that supplies it with legal vitality. In

considering the authorities cited by counsel in the instant cause, it has been important to note their relevancy to these outstanding features.

Counsel for respondents has cited *Farley v. Fair et ux.*, 144 Wash. 101 (256 P. 1031), to the effect that a broker's contract of employment for the sale of lands will not be enforced when by indefiniteness of description it contravenes the public policy of said state as declared by the statute of frauds, even though valid under the laws of Oregon, where it was made. A perusal of the opinion shows an indefinite description of the real property the subject of the contract. Under the authorities cited, it would seem that the *lex fori* must determine the matter of the admissibility of evidence.

Again in the case of *Barbour v. Campbell*, 101 Kan. 616 (168 P. 879), the court construed section 6 of the Kansas act for the prevention of frauds and perjuries (Gen. St. 1915, § 4889). The question arose under a contract made in Idaho, where the said oral contract was legal. The decision here was to the effect that it was in conflict with the statute of frauds. Although said evidence was held inadmissible, the decision of said matter belonged to the forum. It does not seem to have been a question germane to that which involves the violation of a public policy adopted by the courts as is here contended for. In the instant cause there is an agreed state of facts showing an indebtedness, with the execution of a note and mortgage upon lands situate in another state to secure the same. The proceedings in collecting the moneys due have there been exhausted, and leave is now asked of the Oregon court to pursue the collection of the remainder against the defendants in Oregon, where they reside. The answer made by defendants in their brief is that an action to collect a

deficiency on a purchase-money note after foreclosure of the purchase-money mortgage is not constructive, and is injurious to the public good and unenforceable here, being contrary to the public policy of Oregon.

■ The phrase "public policy" is a term which seems difficult of precise definition. Mr. Greenhood, in his work on public policy, at page 46 thereof, has this to say about the expression:

"But when a contract is valid under the public policy of the state where made, it will be enforced in another state, although the same would by the statute laws of the latter state be void, unless its enforcement would exhibit to the citizens of the state an example pernicious and detestable."

In the present matter we have to consider what that comity which exists between nations and states requires to be done. It is defined as the courtesy by which nations or states recognize and give effect within their own territory to the laws of another state or nation. The rule of law quite generally accepted in regard to the application thereof is as follows:

"The law of one state having, *ex proprio vigore*, no validity in another state, the enforcement of a foreign contract which would not be valid by the law of the forum where its enforcement is judicially attempted, depends upon comity which is extended for that purpose, unless the agreement is contrary to the public policy of the state of the forum, in that it is contrary to good morals, or the state or its citizens would be injured by the enforcement, or it perniciously violates positive written or unwritten prohibitory law; the extent to which comity will be extended being very much a matter of judicial policy to be determined within reasonable limitations by each state for itself." *International Harvester Co. v. McAdams,* 142 Wis. 119 (124 N. W. 1042, 26 L. R. A. (N. S.) 774, 20 Ann. Cas. 614).

See, also, *Milliken v. Pratt,* 125 Mass. 374 (28 Am. Rep. 241); *Loucks v. Standard Oil Co.,* 224 N. Y. 99 (120 N. E. 198, 201); *Flagg v. Baldwin,* 38 N. J. Eq. 219, 48 Amer. Rep. 312.

■ The courts of each state determine how far comity requires the enforcement of foreign contracts. It results that there is contrariety of view. However, the above statement of the law would seem in harmony with the weight of authorities.

In *Flagg v. Baldwin,* supra, the court says:

"It is true that in *Dolman v. Cook,* 14 N. J. Eq. 56, and *Campion v. Kille,* 14 N. J. Eq. 229, ubi sup., foreign contracts, valid by the law of the state where made, were enforced here, although, by our law, they were usurious and declared to be void. No consideration seems to have been given to the question whether our usury law was such a law and evinced such a public policy as required us to refrain from enforcing foreign contracts in conflict with it. As we have seen, that consideration led our courts to reject foreign assignments violative of our laws, where the interests of our own citizens were concerned. But a plain distinction at once presents itself between a usury law and a law regulating assignments for the benefit of creditors, or a law against gaming. One affects only the parties to the contract, and is framed for the protection of the borrower. The others relate to the public or classes of the public who are interested therein and affected thereby."

■ It will at once be conceded that a contract entered into in a foreign state is not to be regarded as obnoxious to the rule of comity which would permit its enforcement in a sister state merely because it could not validly have been made there; nor is it one to which comity will not be extended because the making of such contracts in the place of the forum is pro-

hibited. By the foregoing authorities there must be something which offends by shocking moral standards, or is injurious or pernicious to the public welfare.

In *Loucks v. Standard Oil Co.*, supra, the court says upon this subject:

"Our own scheme of legislation may be different. We may even have no legislation on the subject. That is not enough to show that public policy forbids us to enforce the foreign right. A right of action is property. If a foreign statute gives the right, the mere fact that we do not give a like right is no reason for refusing to help the plaintiff in getting what belongs to him. We are not so provincial as to say that every solution of a problem is wrong because we deal with it otherwise at home. Similarity of legislation has indeed this importance: its presence shows beyond question that the foreign statute does not offend the local policy. But its absence does not prove the contrary. It is not to be exalted into an indispensable condition. The misleading word 'comity' has been responsible for much of the trouble. It has been fertile in suggesting a discretion unregulated by general principles."

■ The statute of Oregon, said section 426, Or. L., heretofore referred to, regulating the foreclosure of a mortgage given to secure the payment of the purchase price of land, provides that the mortgagee shall have no judgment over against the mortgagor for any deficiency on account of such mortgage or note or obligation secured by the same after applying the proceeds of the sale of said mortgaged property towards the satisfaction of said indebtedness. That is tantamount to saying that the land shall be received in complete payment. It may be said that this law in a way operates to protect against purchases of land which have proved improvident, in that they are thereby relieved in many

instances from contracts and obligations otherwise enforceable. The wisdom of such a statute is not a subject of discussion. It is the law of the state of Oregon. However, the sister state of Montana has not such a law. The respondents were there liable upon their contracts for the amount thereof, without any such modifying features. And, as we have seen, the parties made their contract in the state of Montana, with reference to lands situate in said state, and such obligations are controlled in their enforcement and application by the laws of the state where executed.

■ The various authorities cited have received careful consideration. As has been stated, each case depends upon the particular facts and circumstances attending it. It does not occur to us that the principles of comity governing states in their intercourse and relations with each other dictates a course that would deny to the appellant in the instant cause the prosecution of this action in the courts of Oregon.

We adhere to our former decision.